463 So.2d 681 (1985)
SUCCESSION OF Mathilde Lopes, Divorced Wife of Edgar C. LANDRY.
No. CA-2178.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1985.
*682 Phyllis C. Coci, Vincent C. Cuccia, Metairie, for plaintiff-appellee.
Patrick C. Kelley, William L. Andry, Andry & Andry, New Orleans, for defendants-appellants.
Before GARRISON, BARRY and LOBRANO, JJ.
BARRY, Judge.
A mother's testamentary disinherison is based on a confrontation with her son in 1947. The issues are whether that incident involved a C.C. Art. 1621(1) "striking" of the mother or if the son's failure thereafter to contact his mother amounted to cruelty under C.C. Art. 1621(2).
Mrs. Mathilde Landry died testate in 1980. Her 1970 will acknowledged forced portions to five of her six children: Edgar, Charles, Esther, Norbert and Myra (the executrix), and left the disposable portion to Norbert. As to her other child, Wilbert, the will states:
I do hereby disinherit my son, Wilbert C. Landry, for the following reasons. Approximately *683 twenty-three (23) years ago, my son, Wilbert C. Landry, went into a violent rage and accosted me in the doorway of my apartment and struck me and was pushing me in such a threatening and violent manner that it was necessary for my daughter, Myra, to run and telephone the police and when Myra returned to the scene of the struggle after the telephone call, she came to my rescue by jumping on the back of her brother and this deterred him somewhat until the police arrived and at that time he battled the police and was taken to jail. My son, Wilbert, never apologized for striking me or for the above referred to attack upon me and although he has always lived in the City of New Orleans or the Greater New Orleans Area, he has never come to see his mother not even on many occasions (sic) when I was confined to the hospital because of a heart condition or other physical ills. He has never telephoned me, he has avoided me and has conducted himself towards me with total indifference and disaffection.
The executrix filed a petition to recognize the attempted disinherison. An intervention on behalf of Wilbert by his two brothers and sister (not Myra or Norbert) was dismissed and they filed an amicus memorandum. The trial judge concluded the proof was insufficient to support disinherison.
The pertinent articles provide:
C.C. Art. 1621(1)
If the child has raised his or her hand to strike the parent, or if he or she has actually struck the parent; but a mere threat is not sufficient.
C.C. Art. 1621(2)
If the child has been guilty, towards a parent, of cruelty, of a crime or grievous injury.
At the time of the June 30, 1947 incident, Wilbert, his wife and children were moving from their apartment in his mother's apartment house. Wilbert owned a refrigerator and was going to take it to his new home. Mrs. Landry wanted to keep the refrigerator in order to rent the apartment after her son's departure. Wilbert threatened to destroy the refrigerator if he wasn't permitted to take it.
Myra, then 15 years old, testified Wilbert got a hatchet (an axe in her deposition) to chop up the refrigerator and Mrs. Landry told Myra to call the police. Myra said Wilbert pushed and shook his mother, and held her wrists (while somehow holding the hatchet). Myra called Norbert, who was in the mother's apartment, then she jumped on Wilbert's back. The police arrested Wilbert for disturbing the peace. Myra admitted Wilbert never tried to hit his mother nor damage the refrigerator.
Norbert, then 17 years old, testified Wilbert had a hatchet and shoved and pushed Mrs. Landry ("whether you call it punch or shove or whatever"). By deposition he said Wilbert did not strike his mother.
William Andry, attorney for the executrix and notary for Mrs. Landry's will, confirmed his preparation of the will. However, his testimony relative to what Mrs. Landry told him about the 1947 incident was rank hearsay and clearly improper. It did not provide the factual support required by C.C. Art. 1624.
Michael Canedo, who started working for Mrs. Landry in 1973, was also allowed to testify as to what she told him about the 1947 incident. That testimony, too, was hearsay and inadmissible.
Therefore, the only probative testimony to support disinherison came from the two youngsters.
Wilbert testified he never struck his mother. He admitted having a bad temper and was mad when his mother kept his refrigerator. The arrest for disturbing the peace was not prosecuted.
Stanley Tassin, an old friend (though not close at the time of trial) of Wilbert's who was helping him move from the apartment, confirmed the argument and said Wilbert got the axe (hatchet) to chop up the appliance. Tassin emphatically said Wilbert did not strike, push, touch, shove or physically contact his mother. After the police arrested *684 Wilbert, Tassin was invited by Mrs. Landry to have lunch. Myra and Norbert testified that Stanley was not present at the time of the incident.
Giving great weight to Tassin's testimony, the trial court's reasons state:
The other heirs have failed to prove by a preponderance of the evidence that Wilbert actually struck Mrs. Landry. Stanley Tassin, the only independent witness, testified pursuasively (sic) that although Wilbert and Mrs. Landry argued violently that day in 1947, at no time did Wilbert actually strike his mother.
There is no right more sacred than that of a forced heir to inherit his legitime and it is part of our Constitution.[1]Succession of Guerre, 197 So.2d 738 (La. 4th Cir.1967), writ denied 250 La. 928, 929, 933, 199 So.2d 925, 926 (La.1967). See also Thomas B. Lemann, In Defense of Forced Heirship, 52 Tul.L.Rev. 20 (1977); Harriet Spiller Daggett, General Principles of Succession on Death in Civil Law, 11 TUL.L.REV. 399 (1937).
A testator is required to specify the reason for the attempted disinherison; the other heirs are obliged to prove the disinherison by a preponderance of the evidence. La.C.C. Art. 1624; Succession of Chaney, 413 So.2d 936 (La.App. 1st Cir. 1982), writ denied 420 So.2d 449 (La.1982); Pennywell v. George, 164 La. 630, 114 So. 493 (1927). A testamentary disinherison is null unless the supporting evidence is proven contradictorily with the presumptive heir sought to be disinherited. See Succession of Lissa, 195 La. 438, 196 So. 924 (1940).
In effect, a testamentary disinherison only provides the basis for a lawsuit with the burden of proof on those who seek to have the disinherison judicially recognized.
There is insufficient proof that Wilbert's conduct constituted an attempt to strike his mother or was even intended to scare her. He got the hatchet to destroy the refrigerator and it had no significance in the incident. The fact that Wilbert had a bad temper and displayed it is immaterial. The only independent witness to the incident, Tassin, unequivocally stated that Wilbert did not strike, touch or raise his hand to his mother.
Where evidence is conflicting we should not disturb the trial court's reasonable evaluation of one set of witnesses as credible and its consequent rejection of testimony of the opposing set of witnesses; nor should we disturb the trial court's reasonable factual inferences drawn from testimony found by it to be credible. (Citation omitted) Succession of Chaney, supra at 940.
We agree with the trial court's conclusion that the plaintiff heirs failed to carry their burden to prove the testamentary disinherison.
It is uncontroverted that Wilbert and his mother did not reconcile after their argument in 1947. They did not speak or see each other. The executrix claims their separation amounted to "cruelty" sufficient to support disinherison under C.C. Art. 1621(2). We disagree. An argument which results in prolonged indifference by both parties cannot be characterized as "cruelty" by one of the parties. Respect between parent and child is a mutual obligation. Disinherison cannot result from a child's failure to communicate with a parent.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] La. Const. Art. XII § 5 (1974); La. Const. Art. IV § 16 (1921).