572 So.2d 142 (1990)
In the Matter of the SUCCESSION OF Shelly Atkins BERTAUT.
No. CA 89 1047.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Writ Denied January 11, 1991.
*143 Karen L. Eddlemon, Baton Rouge, for plaintiff-appellee Etta Chemin Bertaut.
Mary Olive Pierson, Baton Rouge, for defendants-appellants Shelly Morris Barto, Peter Joseph Barto.
Before COVINGTON, C.J., LANIER, J., and VIAL LEMMON[*], J. Pro. Tem.
LANIER, Judge.
This action is a suit by a testamentary executrix seeking to enforce the provisions of a last will and testament which disinherited two forced heirs. A rule to show cause was filed by Etta Bertaut, the surviving spouse and testamentary executrix of Shelly Atkins Bertaut, against Shelly Morris Barto[1] and Peter Joseph Barto[2] (hereinafter collectively referred to as the Bartos), sons and forced heirs of Mr. Bertaut, seeking to have them disinherited for failure to communicate with him without just cause for a period in excess of six years. The Bartos filed a peremptory exception raising the objection of no cause of action which was overruled. After a contradictory hearing, the trial court found that the Bartos had failed to prove their failure to communicate with Mr. Bertaut was with just cause and rendered a judgment approving the disinherison. The Bartos took this suspensive appeal.

FACTS
Mr. Bertaut was born on September 27, 1915. Prior to May of 1935, he married Antoinette Lalumia (Mrs. Barto).[3] On May 17, 1935, Shelly M. Barto was born of this union. Two years later another son, Peter J. Barto, was born.
Shortly before the birth of Peter, Mr. Bertaut left his family for unknown reasons. He met and began seeing Etta Chemin in April of 1940. On June 7, 1940, at approximately 2:00 p.m., Mr. Bertaut and Mrs. Barto were divorced. At 5:00 p.m. on the same day, Mr. Bertaut and Etta Chemin (Mrs. Bertaut) were married. Mr. and Mrs. Bertaut resided in Baker, Louisiana, for most of their married years. They had two daughters during their marriage.
In the middle of 1942, Mr. Bertaut was arrested for failure to support his two sons. As a result of his arrest, Mr. Bertaut began paying $25 a month in child support. Prior to his arrest, Mr. Bertaut had not paid any support for his sons.
Shelly Barto saw his father twice during his father's lifetime. He saw Mr. Bertaut once for an hour when he was ten years old. This visit took place at Mrs. Barto's home in Slidell, Louisiana. He also saw Mr. Bertaut when he was eighteen years old and a freshman at Louisiana State University in Baton Rouge, Louisiana. This visit lasted about an hour.
Peter Barto saw his father approximately seven times during Mr. Bertaut's lifetime. *144 He last saw his father in 1979 after his father had suffered a stroke.
Mr. Bertaut died on October 28, 1987, in Mandeville, St. Tammany Parish, Louisiana. He left a will dated April 3, 1986.

OBJECTION OF NO CAUSE OF ACTION

(Assignment of error number 1)
The Bartos contend the trial court erred in overruling their peremptory exception raising the objection of no cause of action. They contend the disinherison provision is defective because it states that Mr. Bertaut desires to disinherit them under the provisions of La.C.C. art. 1623(12) which does not exist and it fails to state that their failure to communicate with Mr. Bertaut was without just cause.
The peremptory exception raising the objection of no cause of action tests the legal sufficiency of the petition and is triable on the face of the pleadings. For the purpose of determining the validity of the exception, all well-pleaded allegations of fact are accepted as true, and if the allegations set forth a cause of action as to any part of the demand, the exception must be overruled. Ledet v. Hogue, 540 So.2d 422 (La.App. 1st Cir.1989). Doubts are resolved in favor of the sufficiency of the petition. Reeder v. Laks Corporation, 555 So.2d 7 (La.App. 1st Cir.1989), writs denied, 559 So.2d 142 (La.1990). These rules apply to the determination of whether a provision in a will states a cause for disinherison.
The disinherison provision of Mr. Bertaut's will reads as follows:
I specifically disinherit my two (2) sons, Shelly Morris Bertaut, and Peter Joseph Bertaut, under the provisions of Article 1623(12) inasmuch as they have failed to make any effort to communicate with me for a period in excess of six (6) years even though they have known of my whereabouts and they have not been in the military forces of any kind.
For a disinherison to be valid, it must be made in one of the forms prescribed for testaments. La.C.C. art. 1618. The disinherison must be made by name and expressly, and for just cause, otherwise it is null. La.C.C. art. 1619. There are no just causes for disinherison except those expressly recognized by law. La.C.C. art. 1620.
The causes for disinherison of a child by a parent are found in La.C.C. art. 1621. The causes for disinherison of a parent by a child are found in La.C.C. art. 1623. La.C.C. art. 1621(12) provides the following:
If the child has known how to contact the parent, but has failed without just cause to communicate with the parent for a period of two years after attaining the age of majority, except when the child is on active duty in any of the military forces of the United States. (Emphasis added)
It is apparent that the disinherison provision of Mr. Bertaut's will contains a typographical error when it refers to La.C.C. art. 1623, instead of La.C.C. art. 1621. This error does not make the provision defective because it clearly states the substance of a cause for disinherison under La.C.C. art. 1621(12). See Ambrose Succession v. Ambrose, 548 So.2d 37 (La.App. 2nd Cir.1989).
The sufficiency of a disinherison provision to state a cause of action must be decided on a case by case basis. The disinherison provision is not defective because it fails to state that the Bartos' lack of communication for six years is without just cause.[4] The facts recited in the disinherison provision adequately state the cause for which Mr. Bertaut is attempting to disinherit his sons. The requirement of expressly stating the cause of disinherison is fully accomplished when the statement is made that the child has failed to communicate *145 with the parent for a period of two years when the child has known how to contact the parent.[5]See Stephens v. Duckett, 111 La. 979, 36 So. 89 (1904).
The trial court found that the disinherison provision in Mr. Bertaut's will sufficiently stated a cause for disinherison against the Bartos and overruled their peremptory exception raising the objection of no cause of action. For the reasons stated above, we find that the trial court was correct.
This assignment of error is without merit.

VALIDITY OF THE CAUSE FOR DISINHERISON

(Assignment of error number 2)
The Bartos contend the trial court erred in finding that they failed to meet their burden of proving that the cause stated for disinherison was not sufficient to disinherit them. They contend that they sufficiently proved that their failure to communicate with Mr. Bertaut was with just cause.
La.C.C. art. 1624 requires the testator to express in his will the reasons for disinherison of a forced heir. La.C.C. art. 1621 provides for a rebuttable presumption that the facts set out in the act of disinherison are correct. Prior to 1985, the other heirs of the testator were obliged to prove the facts on which the disinherison was founded, otherwise the disinherison was null. In 1985, the legislature amended La.C.C. art. 1624 to shift to the disinherited forced heir the burden of proving that the cause stipulated for disinherison did not exist or that the forced heir was reconciled with the testator after the acts alleged to consitute the cause for disinherison.[6]Succession of Vidrine, 562 So.2d 52 (La.App. 3rd Cir. 1990); Ambrose Succession v. Ambrose, 548 So.2d at 39; K. Spaht, Successions and Donations, Development in the Law, 1984-1985, 46 La.L.Rev. 707 (1986).
The Bartos at trial admitted that they had not communicated with their father in over six years. They contend their failure to communicate with their father was with just cause because their father abandoned them when they were infants and never attempted to establish any type of relationship with them.
In K. Spaht, supra, pp. 711-713, just cause is discussed as follows:
The heir may also prove as a defense to disinhersion that his failure to communicate was with "just cause." "Just cause" explicitly provided by the statute includes lack of knowledge concerning how to contact the parent and active military service. Other examples of "just cause" can be borrowed perhaps from the statute dispensing with the natural parent's consent to an adoption. A condition of the parent's failure to communicate with the child which makes his consent to the adoption unnecessary is that the failure to communicate be without *146 just cause. A survey of the jurisprudence interpreting the adoption provision reveals that parents have urged the following circumstances as just cause: incarceration, drug addiction, and emotional state. Incarceration urged as just cause for failure to communicate with a child was rejected by the court: "We would think that a father situated such as this who had a real concern for his children would recognize that, in order to maintain a relationship under these circumstances, an extra effort is necessary." The same should be true if the child is incarcerated and fails to communicate with the parent. It is also obvious that the Legislature intended to place the burden of making the effort to communicate on the child, since failure, not refusal, to communicate is the ground for disinherison. In the two cases where drug addiction and the emotional state of the parent were offered as "just cause" for failure to communicate or pay support, the issue was avoided by the court.
In deciding what constitutes just cause for failure to communicate by the child, the child's psychological state of mind presents the most difficulty. Drug addiction with its accompanying dependency and anxiety, other serious psychiatric problems that can be clinically identified, or psychological disturbances created by such events as an argument with the parent or a stepparent may be urged by the heir as "just cause." Consider, for example, the factual circumstances of Succession of Landry [463 So.2d 681 (La.App. 4th Cir.1985)]. If the case had been decided under Civil Code article 1621 as amended, the heir would have been compelled to argue "just cause" for his failure to communicate with his mother from 1947 until her death in 1980. The "just cause" for his failure to communicate was an acrimonious incident involving the removal of the heir's refrigerator from an apartment owned by his mother. In her will the mother wrote, "`My son, Wilbert, never apologized for striking me or for the above referred to attack upon me and although he has always lived in the City of New Orleans or the Greater New Orleans Area, he has never come to see his mother even on many occasions (sic) when I was confined to the hospital because of a heart condition or other physical ills.'" The court suggested in its opinion that the mother was as much at fault as the child in failing to heal the breach: "Respect between parent and child is a mutual obligation."
However, in Succession of Landry, the executrix was seeking to prove that the disinherited heir had been guilty of cruelty to his mother. The court responded to the allegations of cruel treatment in the following manner: "An argument which results in prolonged indifference by both parties cannot be characterized as `cruelty' by one of the parties." It then added gratuitously, "[d]isinherison cannot result from a child's failure to communicate with a parent."
The law has changed. Because the legislation now imposes a responsibility upon the child to communicate with a parent, an argument that creates strained relations with the parent should not constitute "just cause." The communication by the child need not apologize to the parent for an argument where both parties were at fault, but it should be respectful in tone, as was previously discussed. Furthermore, reliance upon the jurisprudence interpreting "just cause" under the adoption statute should proceed cautiously because the policies underlying adoption and disinherison differ substantially. Whereas the adoption statutes dispensing with the natural parent's consent must be strictly construed as in derogation of the natural parent's rights, the disinherison legislation should be interpreted liberally to permit a parent greater freedom in disinheriting an unworthy child. The motivation of the law regulating parent-child relations is to assure the natural parent the opportunity to establish strong emotional ties to the child. If the parent is dead, there is no reason to deny the disinherison to encourage such emotional relationship. Yet, balanced against the *147 strict interpretation of the adoption statutes is a consideration also not present in the laws on disinherisonthe critical need to provide a stable, warm, loving environment for the minor child. (Emphasis added; footnotes omitted)
The record reveals that Mr. Bertaut abandoned the Bartos when Shelly was two years old and Peter was still in utero. After he abandoned his two sons, Mr. Bertaut began a new life in Baker, Louisiana. He met Etta Chemin (Mrs. Bertaut) in Baker and after a six week courtship proposed to her. At this time, he informed her that he could not get married until he obtained a divorce from his first wife. Mrs. Bertaut found out at this time that Mr. Bertaut had two small children. About two weeks after his proposal, Mr. Bertaut obtained a divorce from his first wife. This occurred on June 7, 1940 at 2:00 p.m., and at 5:00 p.m. on the same day, he married Mrs. Bertaut. Mr. Bertaut at this time told Mrs. Bertaut that he did not have to pay support for the children. Mr. Bertaut did not pay child support for his sons until he was legally forced to pay.
The record shows that Mr. Bertaut had contact with Shelly twice in fifty years. These meetings occurred when Shelly was 10 and 18 years old. He last saw his father in 1953.
Mr. Bertaut saw Peter seven times in forty-eight years. He first met Peter when Peter was eight years old. He saw Peter again when Peter was about thirteen years old. On this occasion, Mrs. Bertaut wanted to meet Peter, so she picked him up from in front of his house. This meeting was the result of Mrs. Bertaut's efforts. Mr. Bertaut saw Peter again when Peter was in high school. Peter had gotten into trouble, and Mr. Bertaut went to Slidell to get the problem straightened out. Mr. Bertaut saw Peter twice in 1969 as a result of his daughter's efforts. Peter also visited Mr. Bertaut twice in 1979 after Mr. Bertaut had suffered a stroke. Peter did not see his father after 1979.
The record reveals that Mr. Bertaut did not seek to establish any type of meaningful relationship with his sons. The majority of his contacts with his sons were initiated by other people.
The trial court in its oral reasons for judgment stated the following:
THE COURT FINDS THAT THE HEIRS' FEELINGS ABOUT THEIR FATHER'S SEPARATION AND DIVORCE MAY BE THEIR REASON FOR LACK OF COMMUNICATION. HOWEVER, IT DOES NOT EQUATE TO JUST CAUSE. THERE IS NO EVIDENCE WHATSOEVER IN THE RECORD TO THE EFFECT THAT THE FATHER DISCOURAGED OR PROHIBITED HIS SONS IN ANY WAY FROM COMMUNICATING WITH HIM. IN FACT, THE LAST CONTACT WITH SHELLEY [sic], AS PREVIOUSLY STATED, WAS INITIATED BY THE FATHER, HIMSELF. THE COURT FINDS THAT THE PROOF IS CLEAR AND THAT THE HEIRS HAVE FAILED TO CARRY THEIR BURDEN OF ESTABLISHING THAT THEIR FAILURE TO COMMUNICATE, IN ACCORDANCE WITH CIVIL CODE ARTICLE 1621(12), WAS WITHOUT JUST CAUSE AND THE COURT THEREFORE WILL SIGN A JUDGMENT APPROVING THE DISINHERISON AND WILL ORDER THE WILL EXECUTED, AND WILL SIGN JUDGMENT ACCORDINGLY. (Emphasis added)
The purpose of La.C.C. art. 1621(12) is to require communications between children and parents so that strong family ties are maintained. This court is in accord with the trial court and legal scholars who feel that in ordinary situations La.C.C. art. 1621(12) places the burden of making the effort to communicate on the child. However, we do not think that a child must attempt to communicate with his parent when this attempt would be futile. If attempts by a child to communicate with his parent are futile, his failure thereafter to communicate with the parent is with just cause. A person should not be required by law to perform a vain and useless act.
In this case, the evidence shows that Mr. Bertaut did not want to establish a parental relationship with his sons. Most of his *148 contacts with his sons were not a result of his efforts. The efforts by the Bartos to communicate with their father proved to be futile. The Bartos' failure to communicate with their father under the particular facts and circumstances in this case was with just cause. The trial court erred as a matter of fact and law in finding otherwise.
The Bartos have met their burden of establishing that their failure to communicate with Mr. Bertaut was with just cause and that the cause for disinherison stated in Mr. Bertaut's will is invalid. The disinherison provision in Mr. Bertaut's will will not be enforced against the Bartos.
This assignment of error has merit.

DECREE
For the foregoing reasons, the judgment of the trial court disinheriting Shelly M. Barto and Peter J. Barto is reversed, and the rule to enforce the disinherison provisions of the testament is dismissed with prejudice. This case is remanded to the trial court for further proceedings in accordance with law. Etta Bertaut, as testamentary executrix of the estate of Shelly Atkins Bertaut, is cast for the cost of this appeal.
REVERSED, RENDERED AND REMANDED.
NOTES
[*] Judge Mary Ann Vial Lemmon of the 29th Judicial District Court is serving as Judge pro tempore by special appointment of the Louisiana Supreme Court to fill the vacancy created by the illness and subsequent death of Judge Steve A. Alford, Jr.
[1] Shelly M. Barto, appellant in these proceedings, died on July 4, 1990, while this appeal was pending. The duly qualified testamentary executor of the Succession of Shelly M. Barto, William J. Oberhelman, Jr., was substituted as the appellant in these proceedings.
[2] The record reveals that prior to World War II Mr. Bertaut spelled his last name Barto. This spelling was used on the birth certificates of both Shelly and Peter Barto. After World War II, Mr. Bertaut obtained a copy of his birth certificate when applying for work and found out that he had been spelling his last name incorrectly. From that point on, Mr. Bertaut began using the correct spelling of his last name. His sons continued to use the spelling found on their birth certificates.
[3] Footnote 2 explains the spelling of Mr. Bertaut's last name at the time he married Antoinette Lalumia. Thus, her married name was Antoinette L. Barto.
[4] The disinherison provision in Mr. Bertaut's will does not state that the Bartos' failure to communicate with Mr. Bertaut for six years occurred after the Bartos had attained the age of majority. This omission was not raised by the Bartos and would not have affected our decision.
[5] An heir attacking a disinherison provision can show that the lack of communication for two years was with just cause or before the heir reached majority to defeat the disinherison.
[6] The 1985 revision of La.C.C. art. 1624 is part of a trend by the Louisiana Legislature to liberalize the rules on disinherison in favor of the testator. Act 367 of 1989, effective June 29, 1989, and Act 82 of 1989, effective September 3, 1989; amended La.C.C. art. 1624 to read as follows:

The testator shall express in the will for what reasons he disinherited his forced heirs or any of them, and the forced heir so disinherited is obliged to prove that the cause stipulated for disinherison did not exist or that he was reconciled with the testator after the act or circumstances alleged to constitute the cause of disinherison.
Proof that he was reconciled with the testator after the act or circumstance alleged to constitute the cause for disinherison must be clear and unequivocal, evidenced in writing, and signed by the testator.
The Louisiana Legislature further liberalized the rules on disinherison with Act 788 of 1989, effective July 1, 1990, which amended La.C.C. arts. 1493, 1495 and 1496 and repealed La.C.C. art. 1492. The effect of Act 788 is to allow the testator to exclude normal children over twenty-three years of age from inheriting from him. Although Acts 367, 82 and 788 are not applicable to this case, they do represent public policy expressed by the legislature in this area and can be considered by us in our decision. See Carona v. State Farm Insurance Company, 458 So.2d 1275 (La.1984).