633 So.2d 590 (1993)
SUCCESSION OF Gillis E. CURE, Sr.
No. 93 CA 0718.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
*591 Anthony L. Glorioso, New Orleans, for appellants Gillis Paul Cure, Richard Cure, Gillis Cure, Jr., Ricky Cure, Ronnie Cure, & Roland Cure.
Marian M. Livaudais and Pierre F. Livaudais, Mandeville, for appellee Peggy Starks Cure.
Before LOTTINGER, C.J., and PITCHER and PARRO, JJ.
LOTTINGER, Chief Judge.
This appeal arises from a judgment upholding the disinherison provision of a will. The testator died survived by six sons and a spouse. In his will, the testator disinherited all but one of his sons for their failure to communicate with him for a period of at least two years. Furthermore, after attempting to dispatch with the forced portion of his estate, the testator bequeathed his entire estate to his surviving spouse, in full ownership, and named her as the testamentary executrix. At trial, all of the testator's sons were joined as plaintiffs against the surviving spouse and sought to have the testator's will, particularly the disinherison provision it contained, declared null. However, the trial court upheld the will, particularly the disinherison provision, and dismissed the plaintiffs' claim. Plaintiffs appeal.

FACTS
On January 26, 1991, the testator, Gillis Ernest Cure, Sr., died survived by six sons and a spouse. The testator's sons are Gillis Paul Cure, Roland Cure, Richard Cure, Gillis Ernest Cure, Jr., Ronnie Cure and Ricky Cure, appellants. The testator's surviving spouse is Peggy Starks Cure, appellee. All of the sons are children of the testator's prior marriages.
On January 14, 1991, twelve days before his death, the testator executed a last will and testament in statutory form. At trial, the parties stipulated that the will was valid as to form. In the will, the testator disinherited all of his sons except Roland Cure, pursuant to La.Civ.Code art. 1621(12), which allows a parent to disinherit a child if the child fails to communicate with the parent, without just cause, for two years after attaining the age of majority, when the child knows how to contact the parent. Accordingly, the testator asserted that, except for Roland Cure and Gillis Paul Cure, he had no contact with his children for ten years. Furthermore, the testator asserted that he had no contact with Gillis Paul Cure for more than two years. However, the testator did not stipulate in the disinherison provision that his sons' failure to communicate with him was "without just cause."
At trial, the appellants were joined as plaintiffs against the surviving spouse and attacked the testator's will on the grounds that it was null because of ambiguity and because the testator lacked the mental capacity to confect and execute a will. Furthermore, the appellants claimed that the testator did not properly disinherit five of his six sons. However, in dismissing appellants' claim, the trial court concluded that the will was not ambiguous and that the testator had the capacity to make a will. Moreover, the trial court concluded that the disinherison provision of the will properly disinherited the five sons in that it was not necessary for the provision to specifically state that their failure to communicate with the testator was *592 "without just cause." In addition, the trial court concluded that the appellants failed to overcome the presumption that the cause for the disinherison existed.

ASSIGNMENT OF ERROR
Appellants submit that the trial court erred by determining that the testator properly disinherited five of his children for cause pursuant to La.Civ.Code art. 1621(12).

ISSUES
Appellants' assignment of error raises the following three questions for review: First, is it incumbent upon a parent who desires to disinherit a child pursuant to La.Civ.Code art. 1621(12) to stipulate in the disinherison provision of the testament that the child's failure to communicate with the parent for two years is "without just cause?" Second, assuming that the disinherison provision of a testator's will does not have to contain the "without just cause" phraseology, did appellants show by a preponderance of the evidence that the testator's cause for the disinherison did not exist? Finally, did the disinherited sons have "just cause" for failing to communicate with the testator?

I
Appellants contend that the testator did not satisfy the requirements provided in the Louisiana Civil Code to properly disinherit his children. Specifically, appellants argue that because the testator did not state in his will that the failure to communicate was "without just cause," the testator failed to express the cause for disinherison. Furthermore, appellant's attempt to buttress their position with the proposition that respect between parent and child is a mutual obligation. Hence, appellants claim that because the blame for any failure to communicate between parent and child rests with both, it is incumbent upon the parent to specifically express that the failure to communicate is "without just cause."
The Louisiana Civil Code provides that "[a] disinherison, to be valid, must be made in one of the forms prescribed for testaments." La.Civ.Code art. 1618. Furthermore, "[t]he disinherison must be made by name and expressly, and for a just cause, otherwise it is null." La.Civ.Code art. 1619. Additionally, "[t]here are no just causes for disinherison but those expressly recognized by law, in the following articles." La.Civ. Code art. 1620.
In pertinent part, La.Civ.Code art. 1621 provides:
The just causes for which parents may disinherit their children are twelve in number. There shall be a rebuttable presumption as to the facts set out in the act of disinherison to support these causes. These causes are, to wit:
....
12. If the child has known how to contact the parent, but has failed without just cause to communicate with the parent for a period of two years after attaining the age of majority, except when the child is on active duty in any of the military forces of the United States. (Emphasis added.)
Moreover, La.Civ.Code art. 1624, in pertinent part, mandates:
The testator shall express in the will for what reasons he disinherited his forced heirs or any of them, and the forced heir so disinherited is obliged to prove that the cause stipulated for disinherison did not exist or that he was reconciled with the testator after the act or circumstance alleged to constitute the cause for disinherison.
(Emphasis added.)
In Succession of Bertaut, 572 So.2d 142 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1111 (La.1991), we ruled that a disinherison provision of a will is not defective simply because the provision fails to state that the children's failure to communicate with the parent is "without just cause." We held that the disinherison provision of the will was fully accomplished because it expressly stated that the cause for disinherison sprang from the children's failure to communicate with the parent for a period of two years when the children knew how to contact the parent. Id. at 144-45. Accordingly, we decided that the disinherison provision sufficiently stated a cause for disinherison even *593 though the provision did not expressly specify that the failure to communicate was "without just cause." Id. at 145.
In Stephens v. Duckett, 111 La. 979, 36 So. 89, 90 (1904), the supreme court examined the sufficiency of a disinherison provision of a will in which a parent attempted to disinherit a child on the grounds that, when the child was a minor, she married without the parent's consent. However, in Stephens, the disinherison provision did not expressly state that at the time of the child's marriage she was a minor. Id. 36 So. at 90. Hence, the child contended that the disinherison provision did not express a just cause for disinherison. Id. 36 So. at 90. The child argued that the parent's testament failed to set forth misconduct which would justify disinherison on the grounds that, as a minor, she married without her parent's consent because it expressed no statement pertaining to her age. Id. 36 So. at 90.
In deciding this root case, the supreme court declared: "It is true that the law requires the testator to express in the will the reasons for disinherison, but a testament is not an indictment, in which every essential element of the charge must be alleged with legal certainty." Id. 36 So. at 90. Furthermore, the court found that on the face of the testament the parent intended to disinherit the child for a cause which applies only to minors. Id. 36 So. at 90. Accordingly, the court provided that the parent's omission of the child's age "was not a fatal defect." Id. 36 So. at 90. Thus, in upholding the sufficiency of the disinherison provision, the court concluded that "[w]e cannot presume that she [the child] was a major." Id. 36 So. at 90. Hence, the court apparently reasoned that minority was implied when the cause for disinherison applies only to minors.
In the case at hand, the testator stated in the disinherison provision of his testament that he desired to disinherit five of his six children because they failed to communicate with him when they knew how to contact him. Hence, the testator expressed in his will the reason supporting his desire to disinherit the five children. In other words, the testator expressed the cause for disinherison despite the fact that he did not specifically employ the phraseology of La.Civ.Code art. 1621(12) that the failure to communicate was "without just cause." Accordingly, we hold that the disinherison provision implies that the failure to communicate with the testator was "without just cause." Thus, the testator fully accomplished the disinherison when he stated that the cause for disinherison stemmed from the five children's failure to communicate with him for at least two years when the children knew how to contact him. To hold otherwise would, as the supreme court cautioned in Stephens, unduly place testaments on the same plane as criminal indictments.
Further, the proposition stated in Succession of Landry, 463 So.2d 681, 684 (La.App. 4th Cir.1985), that "[r]espect between parent and child is a mutual obligation," does not warrant, as appellants assert, that a testator must express that the failure of a child to communicate is "without just cause." Instead, the language contained in La.Civ.Code art. 1621(12) places the duty on the child to communicate with the parent when the child knows how to contact the parent. In Succession of Bertaut, we observed the following: "It is also obvious that the Legislature intended to place the burden of making the effort to communicate on the child, since failure, not refusal, to communicate is the ground for disinherison." 572 So.2d at 146 (quoting Spaht, Successions and Donations, Developments in the Law, 1984-1985, 46 La.L.Rev. 707, 712 (1986)). Accordingly, we hold that La.Civ.Code art. 1621(12) does not place an obligation on the parent to contact the child. Hence, a showing that the parent failed to contact the child generally will not prevent the disinherison. Rather, to escape the wrath of disinherison, La.Civ. Code art. 1621(12) provides the child the opportunity to challenge the validity of the disinherison provision by showing that "just cause" existed for not communicating with the parent.
Therefore, appellants' contention is without merit.

II
Next, appellants contend that should we find that the testator's will did not have to *594 contain the "without just cause" language of La.Civ.Code art. 1621(12), the testimony presented at trial will show contacts sufficient to prevent disinherison. Hence, appellants assert that the testator's cause for disinherison did not exist.
La.Civ.Code art. 1621 provides that there shall be a rebuttable presumption as to the facts set forth in the act of disinherison to support the testator's cause for disinherison. Moreover, under La.Civ.Code art. 1624, the forced heir has the burden of proving that the cause stipulated for disinherison did not exist or that he was reconciled with the testator after the alleged act or circumstance which constitutes cause for disinherison. Ambrose Succession v. Ambrose, 548 So.2d 37, 39 (La.App. 2d Cir.1989).
Accordingly, we must determine whether appellants rebutted by a preponderance of the evidence the presumption that the cause for the disinherison existed. However, because it is a settled principle of law that when there is evidence presented to the trial court which, upon its reasonable evaluation of credibility, supplies a reasonable factual basis for its finding, on review the appellate court will not disturb this factual finding in the absence of manifest error. Id. at 40. Hence, because this question is factual, we will not disturb the finding of the trial court unless its determination is manifestly erroneous or clearly wrong.
At trial, Gillis Ernest Cure, Jr. testified that the last time he spoke with his father was over two years before his father's death as a result of a phone call initiated by his father. Furthermore, he testified that the last time he saw his father was approximately four or five years prior to his death. He attempted to justify the fact that he failed to contact his father on the grounds that his father requested that he not call because it would cause problems at home.
Ronnie Cure testified that the last time he spoke with his father was approximately three years prior to his father's death. He attempted to justify his lack of communication with his father on the grounds that he had been busy developing his business and renovating his home. Furthermore, he stated that he never offered any assistance to his father when he found out his father was ill because he "really didn't have much time to be bothered with family, friends or anything." However, he did testify that the December prior to his father's death he and two friends attempted to visit his father to bring him Christmas presents. Ronnie stated that although his two friends went in the house to visit his sick father, he waited by the car because there were two dogs present that frightened him and because appellee appeared upset. Ronnie testified that he finally attempted to visit his father after three years because his business was developed, his house was renovated and he "started to slow up."
Gillis Paul Cure testified that the last time he spoke with his father was in 1986 or 1987. Furthermore, he stated that the last time he saw his father was in the "early eighties," about 1982 or 1983. However, he stated that he did try to call his father when he learned of his father's illness, but he never could get through.
Richard Cure testified that it had been approximately twenty-five years since he last saw his father. He attempted to justify his failure to communicate with his father on the fact that he was a merchant seaman. Although he stated that he held no grievances with his father, he did manage to communicate with his brothers.
Ricky Cure testified that the last time he saw his father was two years prior to his father's death. He stated that because he was always on the road he would sometimes see his father. Further, he stated that sometimes he and his father would wave when they passed each other on the road. However, he also stated that he did have drinks with his father in barrooms. Moreover, he stated that the last time he contacted his father was when his son was born, which was approximately four years prior to trial.
In light of the testimony presented at trial, we find that the trial court's findings, which largely call for an evaluation of credibility, are supported by the record. Accordingly, we find that appellants failed to rebut by a preponderance of the evidence the presumption *595 that the facts supporting the cause for disinherison existed.
Therefore, appellants' contention is without merit.

III
Finally, appellants contend that "just cause" existed for the failure to communicate with the testator. Appellants submit that the testimony presented at trial shows that the testator preferred that his children not attempt to contact him at his residence because it may have caused him problems. Hence, appellants argue that the failure to contact the testator was justified. Further, appellants claim that any lack of communication was also the fault of appellee.
In Succession of Bertaut, we held that a child does not have to attempt to communicate with his parent when the attempt would be futile. 572 So.2d at 147. Furthermore, we decided that if attempts by a child to communicate with the parent are futile, any failure thereupon to communicate with the parent is with "just cause." Id. at 147. We reasoned that "[a] person should not be required by law to perform a vain and useless act." Id. at 147.
However, in Succession of Bertaut, we observed that "[b]ecause the legislation now imposes a responsibility upon the child to communicate with a parent, an argument that creates strained relations with the parent should not constitute `just cause.'" Id. at 146 (quoting Spaht, supra, at 713). In this light, we conclude that the failure to communicate with the testator was not with "just cause" simply because appellants claim that any contact with the testator at his residence may have caused a tense situation. Furthermore, we take notice of the fact that the disinherited sons failed to contact the testator at any other place besides his residence. Moreover, Peggy Starks Cure's failure to timely notify appellants of their father's death had no bearing on their failure to communicate with him while he was alive. Thus, the failure to communicate with the testator lacked just cause.
Therefore, appellants' contention is without merit.

DECREE
For the above stated reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.