680 So.2d 1345 (1996)
Succession of Nicholas Lawrence FRAGALA.
Freddie Gail Akins FRAGALA, Plaintiff-Appellant,
v.
Rebecca Jo Fragala DUBEA, et al., Defendants-Appellees.
No. 28663-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1996.
*1346 John G. Spires, Mer Rouge, for Defendants-Appellees.
Bruscato, Tramontana & Underwood by Carey B. Underwood, Monroe, for Plaintiff-Appellant.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
NORRIS, Judge.
The executrix, Mrs. Freddie Gail Fragala, appeals a judgment sustaining an exception of no cause of action filed by the forced heirs[1] and dismissing her petition for possession of the estate of her late husband, Mr. Nicholas L. Fragala. We find that the District Court applied the correct forced heirship law in effect at the time of Mr. Fragala's death but improperly sustained the exception *1347 and dismissed the petition. We therefore reverse and remand.

Factual and procedural background
Mr. Fragala executed a statutory will on April 1, 1993, at which time the Civil Code stated that children over the age of 23 were not forced heirs.[2] The will named his second wife, the petitioner, executrix of the succession and gave the entire estate to her. The will also provided that "as of this date" the five children of his first marriage (one of whom predeceased him but was represented by a grandson) "are not forced heirs under Louisiana law[.]" In the event that the law recognized them as such, he specifically disinherited them "for reason of their past actions constituting cruelty and grievous injury towards me[.]"
Mr. Fragala died on July 8, 1993. Two months later, the Supreme Court declared Civil Code article 1493, together with related statutes, unconstitutional. Succession of Lauga, 624 So.2d 1156 (La.1993). Mrs. Fragala filed the instant petition to probate the will and for possession of the estate in November 1993.
The forced heirs filed an exception of no cause of action, urging that under Louisiana law[3] the recitals in the will were not sufficient to effect their disinherison. The District Court sustained the exception. Mrs. Fragala obtained a writ order from this court giving her leave to amend to state a cause of action.[4]
Mrs. Fragala therefore filed an amended petition for possession setting forth specific allegations to support the grounds stated in the will. The forced heirs then filed the instant exception of no cause of action, urging that the Civil Code provisions limiting forced heirship to persons under age 23 was unconstitutional, that under applicable law the exceptors were forced heirs, and that the will did not adequately set forth grounds of disinherison. The District Court sustained the exception and dismissed the petition for possession on September 14, 1995.
Subsequent to Lauga, the legislature proposed an amendment to La. Const. art. XII § 5 to permit legislation to redefine forced heirs as descendants 23 years old or younger.[5] By separate act the legislature also re-enacted, contingent upon the passage of the amendment, a version of C.C. art. 1493 substantially the same as the one previously declared unconstitutional, together with special legislation regarding the construction of wills executed prior to January 1, 1996. La. R.S. 9:2501.[6] The amendment was ratified by popular vote on October 21, 1995.
Mrs. Fragala has appealed the judgment, urging the District Court erred in (1) failing to apply the amendment to La. Const. art. XII § 5 retroactively, (2) failing to apply the amendments to La. C.C. art. 1493 and La. R.S. 9:2501 retroactively, and (3) holding that the Civil Code articles regarding disinherison require that the will itself must set forth the specific facts that give rise to one of the grounds listed in article 1621. After oral argument, the parties submitted additional briefs to address the propriety of the exception of no cause of action to defeat the petition for possession under the facts of this case.

Retroactivity of the constitutional amendment
In her first assignment, Mrs. Fragala urges the threshold issue, "whether article 1493, as amended in 1989 and 1990, abolishing forced heirship in favor of descendants over the age of 23, was effective at all times pertinent to this case." She asserts "the answer is yes," but this is incorrect. On the same day as it decided Succession of Lauga, supra, the Supreme Court also decided Succession of Terry, 624 So.2d 1201 (La.1993). There the decedent died after the amendments to art. 1493; the plaintiff, who was over 23 years of age, sought his forced portion. *1348 The District Court found the amended art. 1493 violated La. Const. art. I § 3, which prohibits age discrimination. The Supreme Court amended and affirmed, stating the district court "reached the correct results * * * by applying the law in effect prior to the invalid amendments." Because the Supreme Court plainly enforced the prior law after rejecting the amended law, Mrs. Fragala's argument that the amended law "was effective at all times pertinent to this case" is untenable.
The major thrust of Mrs. Fragala's first assignment is that the subsequent amendment to La. Const. art. XII § 5, which essentially re-enacts the 1990 version of art. 1493, had the effect of reviving the 1990 version retroactively. In support she cites Dr. G.H. Tichenor Antiseptic Co. v. Schwegmann Bros. Giant Super Markets, 83 So.2d 502 (La.App.Orl.Cir.1955),[7] and Fullilove v. United States Cas. Co. of New York, 129 So.2d 816 (La.App. 2d Cir.), writ denied (not reported, 1961), for the theory that a subsequent constitutional amendment which removes the constitutional impediment to enforcing a statute, effectively revives the statute. She also cites Treanor and Sperling, Prospective Overruling and the Revival of "Unconstitutional" Statutes, 93 Colum. L.Rev.1902 (1993), for its exhaustive discussion of the issue. She finally cites T.P.M.P.T. Emp. Credit Union v. Charpentier, 376 So.2d 592 (La.App. 4th Cir. 1979), for the rule that a curative amendment should be applied retroactively.
Under Louisiana law, the general rule is that the Constitution should operate prospectively. Blessing v. Levy, 214 La. 856, 39 So.2d 84 (1949). The Constitution itself provides that the law effectuating a Constitutional amendment may become effective only upon ratification of the amendment. La. Const. art. XIII § 3. The general rule, however, is inapplicable where a consideration of the legislation as a whole makes it clear that a prospective-only application was not intended. Blessing v. Levy, supra. The joint resolution that proposed the constitutional amendment, La. Acts 1995, No. 1321, gives no indication that a retrospective application was intended. It must be presumed that the legislature was aware of the Supreme Court's holding in Succession of Terry, supra, that the 1989 and 1990 amendments to Civil Code art. 1493 could not be enforced with respect to successions opened after their effective date. There is no indication that the legislature intended to reverse this result.
Moreover, the law effectuating the purpose of the amendment does not indicate a retroactive intent. While an act contingent on the passage of a Constitutional amendment usually becomes operative upon ratification of the amendment, La. Const. art. XIII § 3, the Constitution also expressly authorizes the legislature to set an earlier or later date for any bill which it has adopted. La. Const. art. III § 19. Civil Code art. 1493, together with related statutes, was reenacted by La. Acts 1995, No. 1180, effective January 1, 1996, contingent on the passage of the proposed amendment. See also La. Atty. Gen. Op. 95-511. These circumstances strongly indicate that only prospective application was intended.
The cases relied upon by Mrs. Fragala to prove retrospective application actually illustrate clear legislative intent. In Fullilove v. U.S. Casualty, supra, the plaintiffs filed a tort suit against the State. The Constitution empowered the legislature to waive the State's immunity from suit and liability,[8] but the Supreme Court held in Duree v. Maryland Cas. Co., 238 La. 166, 114 So.2d 594 (1959), that a legislative waiver of immunity from the filing of suit was not also a waiver of liability. In response to Duree, the legislature proposed a Constitutional amendment declaring that any waiver of sovereign immunity would operate as a waiver "both from suit and liability." The amendment passed in November 1960, after the accident in which Mrs. Fullilove was injured. The District Court sustained the State's exception of no cause of action, reasoning that at the time *1349 of the tort, Duree granted the plaintiff only the right to sue, but not the right to enforce a judgment. The Supreme Court, however, noted that the amending provision stated:
In the case of any such claim on which suit heretofore has been authorized by the Legislature, and the suit was dismissed on the ground that the defendant's immunity from liability had not been waived, another suit on the same claim may be filed at any time prior to [a sunset date], and such suit shall not be subject to the defense of res judicata based on the dismissal of the prior suit on such claim.
The Court held that this provision was, no doubt, intended to cover cases that were dismissed under the holding of Duree. "Consequently, it must be held that the amendment intended in its application to operate both retrospectively and prospectively." 129 So.2d at 823. In the instant case there is nothing to indicate a similar legislative intent.
This court revisited the issue of retrospective application of Constitutional amendments, in the context of sovereign immunity, in the recent case of Ayers v. Brazell, 27,756 (La.App. 2d Cir. 12/6/95), 665 So.2d 694, writ denied 96-00086 (La.3/29/96), 670 So.2d 1236. There, the plaintiffs, whose homes were damaged in a flood, sued the Bossier Parish Police Jury on grounds that it issued building permits without requiring compliance with the Parish's own flood hazard prevention regulations. The Police Jury filed a motion for summary judgment, urging that the issuance of building permits is discretionary under R.S. 33:4773 D and that the Police Jury was immune from liability for discretionary acts under R.S. 9:2798.1. At the time of the tort, the Constitution waived immunity "from suit and liability" for injury to person or property, and authorized the legislature to establish a procedure for suits against the State and its political subdivisions.[9] While the plaintiffs' case was on appeal, however, the legislature proposed, and the people ratified, a Constitutional amendment allowing the legislature to "limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases[.]" La. Acts 1995, No. 1328, effective November 23, 1995. The amendment itself included the following passage:
The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. (emphasis added)
Finding this clear legislative intent for the amendment to apply retrospectively, we upheld R.S. 9:2798.1's limitation of liability to the claim and sustained the motion for summary judgment. There is no such obvious retrospective intent in Act No. 1321, although such would be expected if the goal were to erase the application of Succession of Terry.
Mrs. Fragala finally urges that the amendment to art. XII § 5 should receive retrospective application because it is curative. In general, procedural or interpretive laws apply both retrospectively and prospectively. La. C.C. art. 6; Rousselle v. Plaquemines Parish School Bd., 93-1916 (La.2/28/94), 633 So.2d 1235; T.P.M.P.T. Emp. Credit Union v. Charpentier, supra. However, laws which establish new rules, rights and duties, or change existing ones, are virtually always viewed as substantive. Rousselle v. Plaquemines Parish School Bd., 633 So.2d at 1244; Manuel v. Louisiana Sheriff's Risk Mgt. Fund, 95-0406 (La.11/27/95), 664 So.2d 81. Until the 1989 and 1990 amendments to La. C.C. art. 1493, and the 1995 amendment to the Constitution, a forced heir's right to inherit his legitime was considered most sacred in the law. Succession of Lauga, 624 So.2d at 1162, quoting from Succession of Guerre, 197 So.2d 738 (La.App. 4th Cir.), writs denied 250 La. 928, 929, 933, 199 So.2d 925, 926 (1967); Succession of Landry, 463 So.2d 681 (La.App. 4th Cir.1985), and citations therein. Under the circumstances, we cannot accept Mrs. Fragala's contention that an amendment removing from persons over 23 years of age the guaranteed right to inherit from their parents is procedural or interpretive or curative. See Succession of Jurisich, 94-1262 (La.App. 4th Cir. 4/25/96), ___ So.2d ___ [1996 WL 203959]. It is obviously substantive and, in the absence of clear legislative intent to the *1350 contrary, it must be given prospective application only. We perceive no such contrary legislative mandate.
We therefore conclude the District Court did not err in refusing to apply the 1995 amendment to La. Const. art. XII § 5 to the instant claim.

Retroactivity of R.S. 9:2501
By her second assignment Mrs. Fragala urges that a new 1995 statute, La. R.S. 9:2501,[10] shows legislative intent to make the 1989 and 1990 amendments to La. C.C. art. 1493 applicable to this case. As already noted, the version of article 1493 that resulted from the 1989 and 1990 amendments, as well as from the 1995 amendment, redefined forced heirs as descendants of the first degree, 23 years of age or younger, or descendants of any age who, because of mental incapacity or physical infirmity, are incapable of taking care of their persons or administering their estates. R.S. 9:2501 provides:
§ 2501. Successions of persons who die after December 31, 1995; construction of testaments executed prior to January 1, 1996
A. The provisions of Act No. 1180 of the 1995 Regular Session shall become effective on January 1, 1996, and shall apply to the successions of all persons who die after December 31, 1995.
B. If the person dies testate, and the testament is executed before January 1, 1996, then the testator's intent shall be ascertained according to the following rules:

(1) That the testament shall be governed by the law in effect at the time of the testator's death in any of the following instances:
(a) When the testament manifests an intent to disinherit a forced heir or to restrict a forced heir to the legitime in effect at the time of the testator's death.
(b) When the testament leaves to the forced heir an amount less than the legitime in effect at the time the testament is executed.
(c) When the testament omits a forced heir and the language of the testament indicates an intent to restrict the forced heir to an amount less than the legitime in effect at the time the testament is executed.
(2) That in all other instances the testament shall be governed by the law in effect on December 31, 1995.
(3) That the term forced heir, as used above, shall mean a forced heir at the time the testament is executed.
(emphasis added)
The issue is one of statutory interpretation. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10.
The statute is not ideally phrased; its reference to "the law in effect at the time of the testator's death" is arguably ambiguous. Mrs. Fragala urges that it means C.C. art. 1493 as amended in 1989 and 1990. We have already noted, however, that the Supreme Court held in Succession of Lauga and Succession of Terry, supra, that the 1989-1990 version of art. 1493 was unconstitutional and that the prior law of forced heirship applied; this makes the prior law, not the 1989-1990 version, the "law in effect at the time of the testator's death."
Further, a close reading of the statute undermines Mrs. Fragala's position. Subsection "A" explicitly makes the statute applicable only to successions of persons who die after December 31, 1995, thus excluding the instant case. Subsection "B" refers to "the legitime in effect at the time of the testator's death," thus strongly suggesting that major, competent children are forced heirs, in which event the prior forced heirship law applies. There would be no purpose for constructing the alternatives set out in "B" if the legislature intended the 1995 version to apply retrospectively.
*1351 Finally, two courts of appeal have stated that the 1995 legislation does not apply to testators who, like Mr. Fragala, executed wills treating their children as not forced heirs on the strength of the unconstitutional article, and died before January 1, 1996. Succession of Jurisich, supra; Succession of Hornsby, 95 2129 (La.App. 1st Cir. 5/10/96), 673 So.2d 354.
For these reasons, the District Court did not err in refusing to apply La. R.S. 9:2501 retrospectively.

No cause of action
By her third assignment Mrs. Fragala argues that if the exceptors are considered forced heirs (as they are), then the District Court erred in holding that her petition for possession failed to state a cause of action. She urges that Mr. Fragala's will, stating that he disinherits his children and grandson "for reason of their past actions constituting cruelty and grievous injury toward me," is sufficient to state a cause of action for possession.
A disinherison, to be valid, must be made in one of the forms prescribed for testaments. La. C.C. art. 1618. It must be made by name and expressly, and for a just cause, or else it is null. La. C.C. art. 1619. The testator shall express in the will for what reasons he disinherited his forced heirs, and the forced heirs so disinherited are obliged to prove that the cause stipulated for disinherison did not exist or that he was reconciled with the testator after the act or circumstance alleged to constitute the cause for disinherison. La. C.C. art. 1624. The causes of disinherison are enumerated as follows:
Art. 1621. Children, causes for disinherison by parents.
The just causes for which parents may disinherit their children are twelve in number. There shall be a rebuttable presumption as to the facts set out in the act of disinherison to support these causes. These causes are, to wit:
1. If the child has raised his or her hand to strike the parent, or if he or she has actually struck the parent; but a mere threat is not sufficient.
2. If the child has been guilty, towards a parent, of cruelty, of a crime or grievous injury.
3. If the child has attempted to take the life of either parent.
4. If the child has accused a parent of any capital crime, except, however, that of high treason.
5. If the child has refused sustenance to a parent, having means to afford it.
6. If the child has neglected to take care of a parent become insane.
7. If the child refused to ransom them, when detained in captivity.
8. If the child used any act of violence or coercion to hinder a parent from making a will.
9. If the child has refused to become security for a parent, having the means, in order to take him out of prison.
10. If the son or daughter, being a minor, marries without the consent of his or her parents.
11. If the child has been convicted of a felony for which the law provides that the punishment could be life imprisonment or death.
12. If the child has known how to contact the parent, but has failed without just cause to communicate with the parent for a period of two years after attaining the age of majority, except when the child is on active duty in any of the military forces of the United States.
The purpose of the exception of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. La. C.C.P. art. 927; Roberts v. Sewerage & Water Bd., 92-2048 (La.3/21/94), 634 So.2d 341. The general rule is that an exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based, i.e., unless the plaintiff has no cause of action under any evidence admissible under the pleadings. Id.; Haskins v. Clary, 346 So.2d 193 (La. *1352 1977). Every reasonable interpretation must be accorded the allegations in favor of maintaining the sufficiency of the petition and affording the litigant the opportunity to present her evidence. Jarrell v. Carter, 577 So.2d 120 (La.App. 1st Cir.), writ denied 582 So.2d 1311 (1991).
A cursory reading of art. 1621 shows that of the 12 causes, 11 are framed in terms of specific facts. Only the cause based on cruelty or grievous injury is general. See Comment, Forced Heirs, the Legitime and Loss of the Legitime in Louisiana, 37 Tul. L.Rev. 710, 755 (1963). It would probably be better practice for a testator advancing this cause of disinherison to incorporate more specific facts; such facts would be entitled to a presumption of validity. See Spaht, Successions and Donations, 46 La. L.Rev. 707, 709 (1986).[11] However, the inclusion of facts to support the cause of disinherison is apparently optional, and omission of such facts merely removes the rebuttable presumption created by art. 1621. Id.
The exception of no cause of action should be denied if there are any admissible facts that would support the well-pleaded allegations. Since art. 1621 permits disinherison on the general grounds of cruelty or grievous injury, Mr. Fragala's will expressly names these grounds, and Mrs. Fragala's amended petition alleges facts which could prove the grounds, we find the petition does state a cause of action. The District Court erred in sustaining the exception; it will be reversed, and the case remanded.
We further note that even if the disinherison language of Mr. Fragala's will were insufficient, and even if Mrs. Fragala's petition for possession failed to allege any facts to support it, we would still reverse the judgment. The will purports to give the entire estate to Mrs. Fragala, to the prejudice of the forced heirs' legitime. An excessive donation does not make the donation null, but makes it subject to reduction. La. C.C. art. 1502; Succession of Degelos, 446 So.2d 412 (La.App. 4th Cir.1984). Mrs. Fragala has stated a cause of action for possession of, at least, the disposable portion of the estate; if the disinherison is sustained, she will be entitled to the entire estate. Thus neither an exception of no cause of action, nor a partial no cause of action, is appropriate. Everything on Wheels Subaru Inc. v. Subaru South Inc., 616 So.2d 1234 (La.1993).

Conclusion
For the reasons expressed, the judgment sustaining the exception and dismissing the petition is reversed and the case is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed to the exceptors, Rebecca Jo F. Dubea, Donna Marie F. White, Paul Phillip Fragala, Laura Lynn F. Roberts and Aron Fragala.
REVERSED AND REMANDED.
NOTES
[1] The forced heirs are Mr. Fragala's children, Rebecca Jo F. Dubea, Donna Marie F. White, Paul Phillip Fragala and Laura Lynn F. Roberts, together with a grandchild, Aron Fragala, whose father predeceased the decedent.
[2] La. C.C. art. 1493, as amended by La. Acts 1989, No. 788, § 1, effective July 1, 1990, and by La. Acts 1990, No. 147, § 1, also effective July 1, 1990.
[3] La. C.C. arts. 1618-1621, 1624.
[4] Succession of Fragala, No. 27,296, unpublished writ order of 1/26/95.
[5] La. Acts 1995, No. 1321.
[6] La. Acts 1995, No. 1180.
[7] This case was actually reversed on appeal. Dr. G.H. Tichenor Antiseptic Co. v. Schwegmann Bros. Giant Super Markets, 231 La. 51, 90 So.2d 343, 60 A.L.R.2d 410 (1956).
[8] La. Const. art. 3, § 35 (1921).
[9] La. Const. art. XII § 10(A) and (C), prior to the 1995 amendment.
[10] This section was added pursuant to La. Acts 1995, No. 1180.
[11] Prior to a 1985 amendment to art. 1621, the burden of proving any facts recited in the will to support the ground of disinherison usually fell to the other heirs who would benefit from the disinherison. See, e.g., Pennywell v. George, 164 La. 630, 114 So. 493 (1927); Succession of Lissa, 195 La. 438, 196 So. 924 (1940).