729 So.2d 22 (1999)
SUCCESSION OF Mary Margaret Loyola MARTINEZ.
No. 98-CA-962.
Court of Appeal of Louisiana, Fifth Circuit.
February 10, 1999.
*23 Glenn C. McGovern, New Orleans, La., Attorney for Plaintiffs Floyd Martinez & The New Orleans Pro Bono Project.
G. Patrick Hand, III, Gretna, Louisiana, Attorney for Executor/Appellee Frederick Baldamar Martinez.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and THOMAS F. DALEY.
CANNELLA, Judge.
Plaintiff, Floyd Martinez, appeals from a judgment dismissing his petition to reopen the Succession of Mary Margaret Loyola Martinez (Mary Margaret), his mother. We affirm.
In 1979, Mary Margaret executed a will in favor of Frederick Baldamar Martinez, Jr. (Frederick), her husband and the father of plaintiff. In 1993, Mary Margaret and Frederick were divorced. Mary Margaret died in 1997.
In August of 1997, Frederick filed petitions to probate the statutory will and for possession. On August 14, 1997, a judgment was rendered placing him in possession of his divorced wife's estate.[1] On February 20, 1998, plaintiff filed a petition seeking to have the succession re-opened, contending that he is a forced heir under La. C.C. art. 1493. On July 8, 1998, the trial judge ruled against plaintiff and dismissed his petition.
On appeal, plaintiff argues that the trial judge erred in finding that plaintiff is not a forced heir and in dismissing plaintiffs case.
La.C.C. art. 1493 A. provides:
A. Forced heirs are descendants of the first degree who, at the time of the death of the decedent, are twenty-three years of age or younger or descendants of the first degree of any age who, because of mental incapacity or physical infirmity, are permanently incapable of taking care of their persons or administering their estates at the time of the death of the decedent. [Emphasis added]
The trial judge found that to be mentally incapable within the meaning of art. 1493, the person must be "severely handicapped." She cited the comments to the article in the third paragraph of Comments (c), relying on that part which states:
... Article 1493(A) clarifies the law in several respects and should help reduce unwarranted or inappropriate claims. For one thing, the Article specifies that the time at which the incapacity or infirmity is determined to be relevant is at the donor's *24 death, which was always intended but may not have been fully clear in the earlier legislation. More important, the Legislature added the word "permanently" before the word "incapable" for the express purpose of emphasizing that a temporary incapacity or infirmity, even if severe, should not apply. The legislature thereby expressly manifested its intent that the rule making disabled children of any age forced heirs should only apply to "seriously handicapped" individuals. The Legislature requested specifically that these Comments be written to explain that it is the purpose of adding the word "permanently" to more effectively express the public policy intended, namely, to protect children who are over the age of 23 as forced heirs if, and only if, they are severely disabled.

In this case, the evidence shows that plaintiff is 33 years old and mildly mentally handicapped. He receives Social Security disability income and is enrolled in the U.S. Navy's Incapacitated Dependant Program. Plaintiff has difficulty with money transactions, banking and he cannot perform more than one task at a time. His brother, aunts and uncles help him with banking tasks and make sure he gets to appointments. Plaintiff lived with his mother until her death. He now lives with his brother, Robert Martinez (Robert), who works offshore. Robert buys the groceries and gives money to one of plaintiffs uncles for plaintiffs use before he goes offshore. While Robert is offshore, plaintiffs family help him with purchasing other groceries or necessities. A friend stays with plaintiff during his brother's absence. Although plaintiff held a job for a short time some years in the past, he is unemployable.
Plaintiff does not consider himself severely handicapped and is socially active. Plaintiff is a float lieutenant in the Krewe of Choctaw. As such, he is responsible for the members getting on the float before the parade. Plaintiff is also a member of the Knights of Columbus. He volunteers with the Women's Auxiliary of the Fleet Reserve, at local church fairs, selling nacho chips. He gets along well with others and appears to be well-liked and likable. Plaintiff can take care of his home, his physical needs and is a good cook. When his mother was alive, he cleaned house and cooked for her and himself.
La.C.C. art. 1493 states that, in order to become a forced heir after the age of 23, the person must be permanently incapable of taking care of their persons or administering their estates. The comments indicate that the intent of the legislature was to provide this remedy only for "severely handicapped" persons. Based on the evidence, plaintiff is considered mildly mentally handicapped, even though he is incapable of taking care of certain aspects of his life without assistance. Consequently, since he is not "severely" handicapped, we find that the trial judge did not err in finding that plaintiff is not a forced heir under La.C.C. art. 1493.
Plaintiff alternatively argues that his mother's will should be invalidated under La.C.C. art. 1608 and R.S. 9:2501.
La.R.S. 9:2501, as amended and reenacted by Acts 1996, 1st Ex.Sess., No. 77, § 2, provides for the construction of testaments that were executed prior to January 1, 1996, relative to successions of persons who die after December 31, 1995, as follows:
B. If the person dies testate, and the testament is executed before January 1, 1996, then the testator's intent shall be ascertained according to the following rules:

(1) That the testament shall be governed by the law in effect at the time of the testator's death in any of the following instances:
(a) When the testament manifests an intent to disinherit a forced heir or to restrict a forced heir to the legitime under the law in effect at the time of the testator's death.
(b) When the testament leaves to the forced heir an amount less than the legitime under the law in effect at the time the testament is executed.
(c) When the testament omits a forced heir and the language of the testament indicates an intent to restrict the forced heir to an amount less than the legitime *25 under the law in effect at the time the testament is executed.
(2) That in all other instances the testament shall be governed by the law in effect on December 31, 1995.
(3) That the term forced heir, as used above, shall mean a forced heir at the time the testament was executed.
In this case, Mary Margaret executed a will that bequeathed everything to her husband, Frederick. In the event of the deaths of herself and her husband in a common accident or calamity or in the event that her husband predeceased her, the will provides that her four "beloved" children and stepson were to inherit one-third of all of her property. Following the satisfaction of that bequest, the stepson and natural children would received the remainder of her estate.
At the time the will was executed, forced heirship was in effect. This will, then, evidences an intent to deprive the children of their legitime as long as the father was alive. Thus, we find that the law at the time of Mary Margaret's death applies, La.C.C. art. 1493.
However, plaintiff argues that, by retroactive application, La.C.C. art. 1608(5) also applies. La.C.C. art. 1608(5) provides for the revocation of testamentary provisions when the testator is divorced from the legatee after the testament is executed and at the time of death. This change in the law is not yet in effect, but will become effective July 1, 1999. Since this is a substantive change in the law of revocation of testamentary provisions and it affects vested rights, it cannot be applied retroactively. See: Succession of Fragala, 28,663 (La.App. 2nd Cir. 9/27/96), 680 So.2d 1345, 1348 (for a discussion of the construction of the changes in the succession laws affecting forced heirship.) Thus, we find that the trial judge did not err in declining to revoke the will on the basis of the subsequent divorce between Mary Margaret and Frederick. Further, the trial judge did not err in dismissing plaintiffs suit.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by plaintiff.
AFFIRMED.
NOTES
[1] The estate consisted of a house, furniture, a 1989 Ford Tempo, a Federal Credit Union account and a bank account. After the debts were paid, the estate was valued at $45,883.05.