868 So.2d 987 (2004)
SUCCESSION OF Dr. Francisco Manuel GONZALES.
Succession of Dr. Francisco Manuel Gonzalez.
Nos. 2003-CA-0823, 2003-C-0537.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 2004.
Rehearing Denied April 7, 2004.
Bernard L. Charbonnet, Jr., Darryl Harrison, Law Office of Bernard L. Charbonnet, Jr., New Orleans, LA, for Appellant, Nina M. Kelly, Ph.D.
Val Patrick Exnicios, Liska, Exnicios & Nungesser, New Orleans, LA, for Appellant.
Harold E. Molaison, Bruce A. North, Adrian F. LaPeyronnie, III, Molaison & Greenberg, L.L.C., Gretna, LA, for Appellee, Francisco Manual Gonzalez, Jr.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
Francisco Manuel Gonzalez, Sr., died on November 26, 2002. Prior to his death, he executed a notarial testament dated July 11, 1990, leaving his entire estate to his then wife, Nina Kelly (Kelly), and designating her as the executrix of his estate. On July 2, 1999, Kelly filed a petition for divorce, which was granted on March 13, 2001.
*988 On December 4, 2002, Dr. Gonzalez's eldest son, Francisco, Jr., filed a petition to be notified of any application for appointment of succession representative and/or tableau of distribution. The petition alleged that Dr. Gonzalez died intestate. One week later, Kelly also filed a petition to be notified of any application for appointment of succession representative. Kelly alleged that her ex-husband died testate, and that she was designated as the testamentary executrix in the will. However, she declined to serve in that capacity.
In January of 2003, Francisco, Jr., applied to be appointed as independent administrator of his father's estate, again alleging that his father died intestate. He named Kelly as defendant-in-rule, requesting that she be ordered to appear and show cause why he should not be appointed independent administrator.
Subsequent to the aforementioned filing by Francisco, Jr., Kelly filed a petition to have Dr. Gonzalez's will probated, and to be confirmed as the testamentary executrix. She attached to her petition a photocopy of the will, alleging her belief that the original was maintained by the notary's former law firm, which no longer existed. Kelly requested the court to appoint a notary to search for the original, but in the event it could not be located, she desired that the photocopy be accepted for probate and that she be confirmed as executrix. Her petition specifically cited to La. Civ. Code art. 1608, a provision enacted in 1997, and which provided that if a legatee is divorced from the testator after the execution of the testament, then any legacies to the ex-spouse or appointments of the ex-spouse are revoked. She argued that the codal provision was substantive in nature, and, therefore, could only be applied prospectively. Thus, the testament should be probated as written.
Francisco, Jr., answered Kelly's petition denying that his father had died testate based on his interpretation of La. Civ.Code art. 1608. Specifically, by applying art. 1608 to the provisions of the testament offered by Kelly, the testament was revoked by operation of law, rendering his father intestate.
On March 17, 2003, the trial court rendered judgment appointing an attorney theretofore not involved in the litigation as provisional administrator. The court reasoned that because neither Francisco, Jr., nor Kelly met the requirements of La. Code Civ. Proc. art. 3097(B), it had to appoint an impartial administrator in the interim. The trial court denied Kelly's petition to be confirmed as testamentary executrix based on the provisions of La. Civ.Code art. 1608(5). Despite the apparent revocation of the will by operation of La. Civ.Code art. 1608(5), the trial court nonetheless ordered the will filed and executed, with the order having the effect of probate. However, the trial court stayed the order of probate "pending a final determination to be made by this court [the trial court], as it relates to who shall be appointed independent or dative testamentary executor of the estate ... at a hearing set for April 21, 2003, in accordance with article 3098 of the Code of Civil Procedure."[1]
In response to the trial court denying her appointment as testamentary executrix, Kelly filed a petition for suspensive appeal, which was lodged with this Court on May 5, 2003. Francisco, Jr., filed an application for supervisory writ with this Court. The writ panel to which Francisco's writ was assigned, ordered the writ consolidated with Kelly's appeal. The panel *989 did so without reasons and without addressing the merits of the writ application.
Louisiana Code of Civil Procedure art. 2974 provides that "[a]ppeals from orders or judgments rendered in succession proceedings shall be governed by the rules applicable to appeals in ordinary proceedings, except that an order or judgment confirming, appointing, or removing a succession representative ... shall be executed provisionally, notwithstanding appeal." As such there is no right to a suspensive appeal. See, Miller v. Miller, 35,934, p. 10 (La.App. 2 Cir. 5/8/02), 817 So.2d 1166, 1173; Succession of Beattie, 163 La. 831, 112 So. 802 (1926).
Nonetheless, it is the opinion of this Court that to dismiss Kelly's appeal would serve a great injustice upon all parties concerned. The main issue in both Kelly's appeal and Francisco, Jr.'s, writ application is the applicability of La. Civ.Code art. 1608(5). Until such time as a ruling is made, the parties cannot move forward with the succession, except through the actions of the provisional administrator. To that end, we convert Kelly's appeal to a supervisory writ and shall address the merits of both writ applications.

DISCUSSION:
The issue in this case is whether La. Civ.Code art. 1608(5) is applicable to a testament executed in 1990. A thorough search of the jurisprudence reveals that the issue is res nova.
Kelly argues that she had a vested right in Dr. Gonzalez's testament, and to apply La. Civ.Code art. 1608(5) retroactively would unconstitutionally divest her of that substantive right.[2] Francisco, Jr., argues that the issue is not retroactive application of the article because Kelly's rights did not come to fruition until Dr. Gonzalez died. Thus, the law in effect on the date of death is applicable.
Louisiana Civil Code art. 1608(5) is part of the revision law of successions adopted by Act 1421 of 1997, which had an effective date of July 1, 1999. The article provides in pertinent part:
Revocation of a legacy or other testamentary provision occurs when the testator:
* * * *
(5) Is divorced from the legatee after the testament is executed and at the time of his death, unless the testator provides to the contrary. Testamentary designations or appointments of a spouse are revoked under the same circumstances.
The revision comments to La. Civ.Code art. 1608 explain the addition of item (5) to art. 1608.
(f) An important new provision in item (5) of this Article covers the situation of divorce that is not otherwise covered by the testament itself. The new rule recognizes that when a testator becomes divorced from a spouse, more often than not, he does not want bequests to that spouse to be maintained, and would very likely not want that spouse to serve as the executor or trustee. The new rule is consistent with Louisiana domestic relations law by providing that the divorce must have occurred after the testament was executed, and that there must have been no reconciliation. Furthermore, the testator may provide to the contrary, so that even though the parties may be divorced, the testator may make a bequest to the spouse, or if he wants *990 that spouse to serve in a representative capacity he may so provide. Most states have adopted similar provisions, and this provision fills a gap in the prior law.
Revision comments are, however, not the law, but rather the opinion of the revisionists. Indeed, La. Acts 1997, No. 1421, § 9 provides that "[t]he headings, source lines, and comments in this Act are not part of the law and are not enacted into law by virtue of this inclusion in this Act."
What has been the law since the adoption of the Louisiana Civil Code of 1870 is that the intent of the testator is the single most important guideline in the interpretation of a testament.
Louisiana Civil Code art. 1611, as amended by Acts 1997, No. 1421, provided:
The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The following rules of interpretation apply only when the testator's intent cannot be ascertained from the language of the testament. In applying these rules, the court may be aided by any competent evidence.
Article 1611 was amended by Acts 2001, No. 560, effective June 22, 2001. A second paragraph was added, which reads:
B. When a testament uses a term the legal effect of which has been changed after the date of execution of the testament, the court may consider the law in effect at the time the testament was executed to ascertain the testator's intent in the interpretation of a legacy or other testamentary provision.
The revision comments to Article 1611 explain that "[a]lthough the intent of the testator controls the effects of his dispositions, it obviously can do so only to the extent that the dispositions are permissible under Louisiana law. The testator's intent to write a prohibited disposition cannot override substantive law that prevents it." Section 3 of Acts 2001, No. 560 provides:
This Act is declared to be interpretive, curative, and procedural in nature and shall apply both prospectively and retroactively; however, this Act shall not apply to successions which have been judicially opened prior to the enactment of this Act.
Dr. Gonzalez's succession was not opened until after the effective date of La. Civ.Code art. 1611 B. Further, at the time Dr. Gonzales executed his will, the legacy to Kelly and the appointment of her as executrix was not prohibited under Louisiana law. The will specificially states that he desires to leave his entire estate to his then spouse, Nina Kelly Gonzalez, and that he desires Nina Kelly Gonzalez to serve as executrix. There is no evidence that Dr. Gonzalez wished to revoke this legacy and appointment. Dr. Gonzalez executed the testament that had been prepared by legal counsel, and appointed that counsel to serve as attorneys for his estate and his chosen executrix. Over 28 months passed between the date Kelly filed the petition for divorce and Dr. Gonzalez's death. Are we to presume that Dr. Gonzalez, a highly educated man who sought the advice of counsel for preparation of his last will and testament, desired to revoke the legacy and appointment in favor of Kelly, or are we to give effect to his testament as written?
The comments to Article 1608 are general comments that make presumptions, e.g., a testator, more often than not, does not want bequests made to an ex-spouse to be maintained. A similar comment states that the testator would very likely not want that spouse to serve as the executor/trix. *991 What of the occasions when a testator has every intention of maintaining a bequest despite having been divorced from the legatee? Are we to interpret the testament to give it the effect intended or are we to make presumptions to give effect to laws created after the testament was written? During argument at the February 28, 2003 hearing in this matter, counsel for Francisco stated that Kelly gave up all of her rights [to Dr. Gonzalez's estate] when she filed for divorce on July 2, 1999. He argued that Kelly was charged with knowledge of the law at that time that provided for revocation of any testamentary dispositions in her favor by filing her petition for divorce. Is Dr. Gonzalez not charged with the same knowledge of the law? Could he not have changed his will if he no longer desired Kelly to be his universal legatee and executrix?
Francisco, Jr., argues that he does not wish to invalidate his father's will, but merely wishes to revoke the legacy and appointment of Kelly. To that end, he argues that La.Rev.Stat. 9:2440 does not apply. Revised Statute 9:2440 was also enacted by La. Acts 1997, No. 1421, and provided at that time:
A testament executed prior to January 1, 1998, and valid under the law and jurisprudence prior to that date, when executed, is not invalidated by the passage of Acts 1997, No. 1421.[3]
However, revocation of the legacy and appointment made in Dr. Gonzalez's testament will effectively invalidate the testament because no legacies or appointments remain. La. Civ.Code art. 1612, one of the rules of interpretation referenced in Art. 1611, states that "[a] disposition should be interpreted in a sense in which it can have effect, rather than in one in which it can have none." To apply La. Civ.Code art. 1608(5) to Dr. Gonzalez's testament would fly in the face of long-standing law and jurisprudence. Accordingly, we find that La. Civ.Code art. 1608(5) does not apply to the last will and testament of Dr. Francisco Manuel Gonzalez.
In his writ application, Francisco, Jr., assigned as error the trial court's appointment of a "stranger" as provisional administrator. Having ruled that Kelly is to be appointed testamentary executrix, that matter is now moot.
Accordingly, the portion of the judgment granting Francisco, Jr.'s, exception of no right of action is reversed, and the portion of the judgment denying Kelly's petition to be appointed testamentary executrix is reversed. This matter is remanded for the trial court to lift the stay of its order of probate and to proceed according to law with the appointment of Kelly as testamentary executrix, and all other matters relative to the succession of Dr. Francisco Manuel Gonzalez.

REVERSED AND REMANDED.
ARMSTRONG, C.J., concurs in the result.
ARMSTRONG, C.J., concurs in the result.
I agree with the result reached by the majority because La. C.C. art. 1608(5), *992 which was enacted as a part of Acts 1997, No.1421, to revoke testamentary provisions in favor of a legatee when the testator is divorced from the legatee subsequent to the execution of those testamentary provisions, was enacted simultaneously with La. R.S. 9:2440 which declares that testaments executed prior to January 1, 1998, are not invalidated by the passage of Acts 1997, No. 1421.
I respectfully concur for the sole purpose of elaborating on Ms. Kelly's argument that she had a vested right in Dr. Gonzalez's testament such that to apply La. C.C. art. 1608(5) retroactively would unconstitutionally divest her of a substantive right. Louisiana has always adhered to the doctrine of nemo est haeres viventis. Succession of Harvey, 573 So.2d 1304 (La. App. 2 Cir.1991); Cox v. Von Ahlefeldt, 30 So. 175, 105 La. 543 (1900); Bothick v. Voorhies, 9 So. 489, 43 La.Ann. 553 (1891); McKenzie v. Bacon, 4 So. 65, 40 La.Ann. 157 (1888). According to this doctrine, no one is the heir of a living person. As applied to this case it means that Ms. Kelly has no vested rights in Dr. Gonzalez's testament until he dies. A legatee has no contractual or substantive interest in a testament prior to the death of the testator. See also La. C.C. art. 949 and Revision Comments thereunder. Therefore, the legislature had the right to make La. C.C. art. 1608(5) retroactive had it chosen to do so. However, La. R.S. 9:2440 shows that the legislature chose not to do so, but instead chose to apply La. C.C. art. 1608(5) prospectively only.
NOTES
[1] It does not appear from the record that the April 21st hearing took place.
[2] Kelly cites Succ. of Martinez, 98-962 (La. App. 5 Cir. 2/10/99), 729 So.2d 22, as authority for her position. However, the facts of that case are distinguishable in that the testator in Martinez died before the effective date of La. Acts 1997, No. 1421.
[3] La.Rev.Stat. 9:2440 was again amended by Acts 2003, No. 74, § 1, to add the language "testamentary provision, legacy, or other appointment" after the word "testament" in the first line. The Act indicates that it is intended to be remedial and curative. Francisco, Jr., has filed an Exception of No Cause of Action in this Court to urge the unconstitutionality of the revision. However, the amendment to La.Rev.Stat. 9:2440 is not germane to our decision because the entire testament, including testamentary provisions and appointments, would be invalidated if La. Civ.Code art 1608 were applied. Thus, the "clarification" of intent encompassed by the revision to La.Rev.Stat. 9:2440 is not relied on by this Court. Accordingly, the Exception of No Cause of Action is denied.