# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-43

**SUCCESSION OF JEANETTE PERRON ARDOIN**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 04-C-1093-A
HONORABLE JAMES PAUL DOHERTY  JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**REVERSED AND REMANDED.**

**Arthur D. Mouton**
**Post Office Box 52269**
**Lafayette, LA   70505**
**(337) 233-3697**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Mary Plonsky Sailors**

**Leslie J. Schiff**
**Schiff Law Corporation**
**Post Office Box 10**
**Opelousas, LA   70571-0010**
**(337) 942-9771**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Wayne Ardoin**

AMY, Judge.

In this succession proceeding, the trial court found that the decedent's daughter was not a forced heir under La.Civ.Code art. 1493. The daughter appeals, contending that the medical evidence showed that she has an inherited, incurable condition that may render her permanently incapable of caring for her person or administering her estate in the future. For the following reasons, we reverse and remand.

## Factual and Procedural Background

The decedent, Jeanette Perron Ardoin, died on May 4, 2004. She was survived by her husband, Wayne Ardoin, and three adult children from a previous marriage. Mr. Ardoin filed a petition to file and execute Ms. Ardoin's olographic testament. Dated May 7, 2001, the testament purports to bequeath the entirety of Ms. Ardoin's estate to Mr. Ardoin.[1]

Ms. Ardoin's daughter, Mary Plonsky Sailors, filed a "Petition for Reduction of Excess Legacy," alleging that she is a forced heir as, at the time of Ms. Ardoin's death, an inherited, incurable disease or condition rendered her incapable of caring for herself and administering her estate in the future. She requested that the excess donation to Mr. Ardoin be reduced to satisfy her legitime, viz., the portion of the decedent's estate reserved to her by law.

---

[1] The olographic testament provides:

I Jeanette Perron Ardoin wife of Wayne Ardoin, make this my last will and testament hereby revoking any and all prior wills that I have made.

I give and bequeath to my husband Wayne Ardoin all properties, movable and immovable, that I may own at my death.

I name and appoint my husband Wayne Ardoin, executor of my estate with full seizin and without bond.

This my will was written dated and signed by me at Opelousas, Louisiana, this 7th day of May 2001.

At the August 2006 hearing on Ms. Sailors' petition, the trial court heard testimony regarding Ms. Sailors' diagnosis of bipolar disorder and the alleged incapacity associated with the condition. In its reasons for ruling, the trial court found that Ms. Sailors was "not permanently incapable of taking care of her person or administering her estate as of the time of the death of the decedent nor does she have an inherited, incurable disease or condition that may render her permanently incapable of caring for her person or administering her estate in the future." The trial court's ruling reveals not only its consideration of La.Civ.Code art. 1493, but its reliance on *Succession of Martinez*, 98-962 (La.App. 5 Cir. 2/10/99), 729 So.2d 22, wherein the fifth circuit affirmed a determination that the phrase "mentally incapable" within the meaning of Article 1493 required the heir to be severely handicapped.

Ms. Sailors appeals the trial court's determination that she is not a forced heir and asserts the following assignments of error in her brief to this court:

1. The trial court failed to follow the specific law of the State of Louisiana, in effect at the death of the decedent, specifically Article 1493 of the Louisiana [Civil Code] as amended by Act 1207 of 2003.

2. The trial court failed to utilize the clear medical evidence presented by the expert witnesses for both the Plaintiff and Defendant in finding that the plaintiff, Mary Plonsky Sailors, was [not] a forced heir of the decedent under the provisions of [La.Civ.Code art.] 1493.

3. The defendant did not present any medical evidence contrary to the testifying experts that contravened their testimon[ies] as to the inherited, incurable disease of Mary Plonsky Sailors and her probable future incapacity to care for her person or administer her estate.

**Discussion**

Ms. Sailors argues that the trial court's reliance on *Martinez*, 729 So.2d 22 in rendering its judgment was misplaced. In particular, she points out that Article 1493

2

has been amended since the fifth circuit rendered *Martinez*. She asserts that the article now provides a "more comprehensive definition of when a person is to be considered a forced heir." In particular, she observes that a 2003 amendment added Paragraph E to Article 1493 and that it does not require that the person claiming forced heir status be "severely handicapped" at the time of decedent's death. She contends that she satisfied her burden of proving forced heir status under the dictates of Article 1493 as it presently exists.

Louisiana Civil Code Article 1493 provides, in pertinent part:

> A. Forced heirs are descendants of the first degree who, at the time of the death of the decedent, are twenty-three years of age or younger or *descendants of the first degree of any age who, because of mental incapacity or physical infirmity, are permanently incapable of taking care of their persons or administering their estates at the time of the death of the decedent.*
>
> . . . .
>
> E. For purposes of this Article "permanently incapable of taking care of their persons or administering their estates at the time of the death of the decedent" shall include descendants who, at the time of death of the decedent, have, according to medical documentation, an inherited, incurable disease or condition that may render them incapable of caring for their persons or administering their estates in the future.

(Emphasis added.)

As referenced above, the trial court interpreted Article 1493 in light of *Martinez*, 729 So.2d 22, a case rendered by the fifth circuit in 1999. Central to *Martinez*, and to the trial court's reasoning in this case as well, is the concept that Article 1493(A) requires that a purported forced heir be "severely handicapped." However, such a requirement is not contained within the text of Article 1493. Furthermore, examination of *Martinez* reveals that this analysis can be traced to a

3

version of Article 1493, comment (c) that has been edited by direction of the legislature and no longer appears in the commentary.

As reported by the fifth circuit, the plaintiff in *Martinez*, 729 So.2d at 24, was "33 years old and mildly mentally handicapped." The trial court in that case determined that the plaintiff was not a forced heir under Article 1493 as he failed to prove that he was "severely handicapped." In doing so, it relied on a portion of Article 1493, comment (c) indicating that the legislature "expressly manifested its intent that the rule making disabled children of any age forced heirs should only apply to 'seriously handicapped' individuals."[2] *Id*. at 24. According to the comment, this intent was evident due to the use of the word "permanently" before the word "incapable."[3] *Id.* The fifth circuit considered the facts presented in *Martinez* in light of this commentary and affirmed the trial court's determination that the plaintiff was not a forced heir because he was not "severely handicapped."

---

[2] The comments to Article 1493 are not "part of the law and not enacted into law by virtue of their inclusion in this Act." *See* 1996 La.Acts No. 77, § 4. However, we reference the comments insofar as they formed the basis for the ruling in *Martinez* and, in turn, were adopted by the trial court in the present case.

[3] *Martinez*, 729 So.2d at 24 sets forth the comment relied upon in that case as follows:

... Article 1493(A) clarifies the law in several respects and should help reduce unwarranted or inappropriate claims. For one thing, the Article specifies that the time at which the incapacity or infirmity is determined to be relevant is at the donor's death, which was always intended but may not have been fully clear in the earlier legislation. More important, the Legislature added the word "permanently" before the word "incapable" for the express purpose of emphasizing that a temporary incapacity or infirmity, even if severe, should not apply. *The legislature thereby expressly manifested its intent that the rule making disabled children of any age forced heirs should only apply to "seriously handicapped" individuals. The Legislature requested specifically that these Comments be written to explain that it is the purpose of adding the word "permanently" to more effectively express the public policy intended, namely, to protect children who are over the age of 23 as forced heirs if, and only if, they are severely disabled.*

The trial court in the present case discussed *Martinez* at length, applying the "severely handicapped" qualification to the evidence presented.[4] This reliance,

[4] With regard to *Martinez*, 729 So.2d 22, the trial court's extensive reasons for ruling reveal, in part:

> The major holding of the *Martinez* case is that the legislature intended that "the rule making disabled children of any age forced heirs should only apply to 'seriously handicapped' individuals." *Id.* at 24. The *Martinez* court, in relying on the Revision Comments, went on to say, "The Legislature requested specifically that these comments be written to explain that it is the purpose of adding the word 'permanently' to more effectively express the public policy intended, namely, to protect children who are over the age of 23 as forced heirs if, and only if, they are severely disabled." *Id.* at 25. In the *Martinez* case, a 33-year-old, mildly mentally handicapped man was found *not* to qualify as a forced heir. Despite the fact that he was found to be unemployable and was receiving Social Security disability benefits, he was found to not qualify as a forced heir for reasons such as: his social activity, participation in volunteer groups, ability to take care of his home, and his ability to cook. Thus, he was not found to satisfy the "permanently incapable" language of Article 1493.

> Therefore, under *Martinez*, it would be required of Ms. Sailors to show that her disorder rises to the level of a "serious handicap" or "severe disability." However, it should be noted that the *Martinez* decision occurred prior to the addition of Section E to Article 1493. Ms. Sailors places heavy reliance upon Section E of Article 1493, claiming that it "totally changes the coverage of the law," and "provides to the court a completely different standard than that suggested by the *Martinez* case." *Pretrial Memorandum for Plaintiff.* This interpretation of Section E would force this Court to completely disregard the holding of *Martinez*, and to instead rely solely on the language of Section E.

> **Section E of Article 1493**

> Unlike Section A, there is a complete lack of Revision Comments concerning the addition of section E to Article 1493. There is no specification of legislative intent concerning its language. The lack of comments is despite a request to the Louisiana State Law Institute "to write comments to all changes made by this Act." 2003 La. Sess. Law Serv. Act 1207. However, the text of section E itself makes clear that its purpose is to clarify and broaden the meaning of "permanently incapable of taking care of their persons or administering their estates at the time of the death of the decedent." The Article now specifically provides that this language includes "descendants, who, at the time of death of the decedent, have, according to medical documentation, an inherited, incurable disease or condition that may render them incapable of caring for their persons or administering their estates in the future." However, it is not the opinion of this Court that the addition of Section E "totally changes the coverage of the law," nor does it appear to "provide to the court a completely different standard than that suggested by the *Martinez* case. What Section E does appear to do is to liberalize the "as of the time of death of the decedent" requirement of Article 1493 (A). Thus, a claimant need not be permanently incapable of taking care of their person or administering their estate *at the time of death*, but may now still qualify as a forced heir if medical documentation can be produced to show that as of *the time of death* the claimant has an inherited, incurable disease or condition that may render them so incapable in the future. It is the opinion of this Court that whereas the language of Section E contributes to the

however, was in error as the basis for the *Martinez* ruling has been eroded. By

Concurrent Resolution No. 1 of the 1998 First Extraordinary Session,[5] the legislature

*time* at which a person must have a condition or incapability, Section A and the *Martinez* decision contribute to the required level of severity and permanence of such condition. There is no statement, whether in the non-existent comments of Section E or the jurisprudence of this state, that suggests an intended overruling of *Martinez*.

**Proof of Forced Heirship**

Based upon the requirements of Article 1493, in order for Ms. Sailors to be considered a forced heir, it must be found that:

1.    Her bipolar condition existed at the time of Jeanette Ardoin's death and is medically documented;

2.    That the bipolar condition is an inherited, incurable disease;

3.    That the bipolar condition causes a "serious handicap" or "severe disability" that does, OR will, render her

    permanently incapable of taking care of her person AND/OR
    permanently incapable of administering her estate.

We further note that, after setting forth this standard, the trial court discussed the testimony and other evidence in the record and made numerous factual findings. Thereafter, the trial court referenced that portion of comment (c) to Article 1493 indicating that it was "contemplated that the guidelines that the courts would use in interpreting and enforcing the incapacity or infirmity provisions were the jurisprudence" concerning limited interdiction. In this regard, the trial court examined *Interdiction of Cornwell v. Cornwell*, 97-425 (La.App. 3 Cir. 10/15/97), 702 So.2d 938, which discussed both full and limited interdiction. Ultimately, the trial court concluded that Ms. Sailors was not a forced heir, stating:

    In summary, this Court finds that Ms. Sailors' condition does not rise to the level of a "serious handicap" or cause her to be "severely disabled" as stated in the *Martinez* decision. For the same reasons, this Court also finds that her condition does not render her "permanently incapable of taking care of her person," nor does it cause her to be "permanently incapable of administering her estate." This Court further finds that, based upon the facts, it has not been sufficiently shown that her condition may render her so incapable in the future.

[5]  Concurrent Resolution No. 1 provides:

WHEREAS, the Louisiana Legislature revised the laws on forced heirship but continued the protection and status as forced heirs of those children who are "permanently incapable of taking care of their persons or administering their estates"; and

WHEREAS, the legislature rejected the Louisiana State Law Institute's recommendation to deny such children the protection and classification as forced heirs; and

WHEREAS, the legislature in Section 4 of Act No. 77 of the First Extraordinary Session of 1996 directed the Louisiana State Law Institute to draft comments

directed the reprinting of "the Revision Comments of 1996 to Civil Code Article 1493 (comment (c)) by deleting all references describing such incapable children in terms other than used in the article, to wit: children who are "permanently incapable of caring for their persons or administering their estates.""

We recognize that neither the trial court nor the parties were focused on the foundation of *Martinez* or the correctness of its requirements. Rather, the parties' focus below, and also before this court, was whether the addition of Paragraph E to

regarding the meaning of such permanently incapacitated children "which are consistent with the provisions of the Act"; and

WHEREAS, the Revision Comments of 1996 to Civil Code Article 1493 (comment (c)) published by West Publishing Company incorrectly characterize permanently incapable children by terms not included within the article as enacted by the legislature, such as "severely disabled" and "seriously handicapped", and thereby purport to limit the category of incapable children as defined by the legislature; and

WHEREAS, the language of the Civil Code Article 1493 does not require that the child prove that he is either "severely disabled" or "seriously handicapped" but instead provides for a protection for a child who is "permanently incapable of caring for his person or administering his property"; and

WHEREAS, the term "permanently" as used in Civil Code Article 1493 relates to duration of the incapacity; and

WHEREAS, the phrase "incapable of caring for his person or administering his property" relates to the extent of his incapacity; and

WHEREAS, the terms "disabled" and "handicapped" are terms not adopted by the legislature and not necessarily coextensive with the standard "incapable of caring for his person or administering his property"; and

WHEREAS, as a consequence, portions of comment (c) to Civil Code Article 1493 are not consistent with the provisions of the article as enacted by the legislature; and

WHEREAS, pursuant to R.S. 24:256, West Publishing Company is authorized to print, publish, sell, and distribute any edition or supplement of the Louisiana Revised Statutes, including the Civil Code, prepared and certified by the Law Institute.

THEREFORE, BE IT RESOLVED that the Legislature of Louisiana hereby directs the Louisiana State Law Institute to instruct West Publishing Company to reprint the Revision Comments of 1996 to Civil Code Article 1493 (comment (c)) by deleting all references describing such incapable children in terms other than those used in the article, to wit: children who are "permanently incapable of caring for their persons or administering their estates".

BE IT FURTHER RESOLVED that copies of this Resolution shall be transmitted to the Successions Committee of the Louisiana State Law Institute and to West Publishing Company.

7

Article 1493 legislatively overruled *Martinez*. Analysis of *Martinez* and its basis reveal that it was error to rely on the case as authority. Recall that the text of Article 1493 makes no reference to the "severely disabled" or "seriously handicapped" criteria. Instead, this criteria was utilized in *Martinez* due to a previous version of comment (c).[7] Although we recognize the complexities raised by the changing commentary, we conclude that the trial court erred in applying *Martinez* and the standard expressed therein. As this reversible error of law pervades the trial court's ruling, it is necessary for this court to perform a *de novo* review of the record and render a judgment on the merits. *See Thompson v. State*, 97-0293, 97-0302 (La. 10/31/97), 701 So.2d 952. We turn to consideration of the evidence presented in light of the requirements of Article 1493.

Ms. Sailors seeks forced heir status as a descendant of the first degree who, because of mental incapacity or physical infirmity, is permanently incapable of taking care of her person or administering her estate at the time of the death of the decedent. La.Civ.Code art. 1493(A). Paragraph E of Article 1493 indicates that the "permanently incapable" requirement of Paragraph A includes "descendants who, at the time of death of the decedent, have, according to medical documentation, an inherited, incurable disease or condition that may render them incapable of caring for

---

[7] The Editor's Note to La.Civ.Code art. 1493 (West, 2007 edition), provides, in part:

> Editor's note. Article 1493 was amended by Acts 1996, 1st Ex.Sess., No. 77, § 1 with revision comments. The original revision comments, however, were modified by the Louisiana State Law Institute *after* the amendment of Article 1493 and the publication of Act No. 77 in the Session Law Service. For the original comments, see West's Louisiana Session Law Service 1996, No. 2, p. 153.

> Revision Comment (c) under Article 1493 has been and reprinted in accordance with Concurrent Resolution No. 1 (1988 1st Ex.Sess.). The legislature directed the Louisiana State Law Institute to edit the 1996 Revision Comment (c) under Article 1493 by deleting all references describing incapable children in terms other than those used in that article, to-wit: children who are "permanently incapable of caring for their persons or administering their estates" and instructed West Publishing Company to reprint the Comment (c), as edited.

their persons or administering their estates in the future." Having examined this record, we conclude that Ms. Sailors has proven the criteria of Article 1493.

By the time of Ms. Ardoin's 2004 death, Ms. Sailors had been diagnosed with bipolar disorder and hospitalized several times for behaviors associated with her condition. Dr. Catherine McDonald, Ms. Sailors' treating psychiatrist, explained that she began treating Ms. Sailors in 2001 while Ms. Sailors was hospitalized on one such occasion. The records detailing the hospitalizations indicate that Ms. Sailors has suffered from auditory hallucinations, delusional thoughts, and, at times, demonstrated a complete inability to care for her person. Both Dr. McDonald and Dr. Philip Arnold Landry, a psychiatrist who conducted a psychiatric examination of Ms. Sailors prior to trial, opined that Ms. Sailors' disorder is likely an inherited, genetic disorder.

While Dr. McDonald testified that bipolar disorder is incurable, she explained that prescribed medications can help patients lead healthy and productive lives in that the frequency and severity of episodes may be reduced. Dr. McDonald noted that Ms. Sailors was hospitalized for two months "because she had refused to take medication." According to Dr. McDonald, the refusal to take medication is "part of any psychotic disorder. . . . [T]he patient becomes paranoid that what you're doing is trying to hurt them, poison them or somehow or another alter the way they feel and they don't want you to do that." Dr. McDonald also explained that the efficacy of the medications may be affected by the use of alcohol and drugs. According to her estimate, "sixty to seventy percent of our bipolar patients self-medicate." The record contains evidence of Ms. Sailors' past use of marijuana and alcohol. Although Dr. McDonald discourages these behaviors, she explained that "if [her patients] drink, I

9

would just as soon they go ahead and take their medication also because a psychotic person who's drinking is even worse than a non-pyschotic person who's drinking."

Ms. Sailors' work history indicates that she has held various positions, including one requiring bookkeeping skills. However, both Dr. McDonald and Dr. Landry were of the opinion that Ms. Sailors' bipolar disorder will prevent her from being consistently employed. In fact, Ms. Sailors has not been regularly employed since 2003 and was determined by the Social Security Administration to be eligible for monthly disability benefits beginning May 2004.[8] Ms. Sailors also denied at trial that she is able to work.

It is clear that Ms. Sailors typically has the ability to care for many facets of her everyday life, as Dr. McDonald opined that she can buy groceries, drive, apply for a loan, and balance a bank account. Ms. Sailors maintains a residence where she explained that she lives "alone with assistance." She stated that she also performs her shopping with assistance. However, this level of functioning is possible only when Ms. Sailors is not acutely ill. Dr. McDonald testified that, despite the appearance that Ms. Sailors can appear "okay," and able to care for her affairs, "the next day it may be totally different." Dr. McDonald explained that, during periods of illness, Ms. Sailors is "completely" incapable of taking care of her affairs. Dr. McDonald testified that during her hospitalization, "it's so severe she can't even function. At times she wasn't eating. You know, just taking a bath, she couldn't do that." Ms. Sailors' sister-in-law testified that she has assisted Ms. Sailors over the years with various issues, including obtaining health insurance coverage.

---

[8] A letter from the Social Security Administration, dated April 19, 2005, is contained in the record and indicates that Ms. Sailors was determined to have become disabled on November 9, 2003 and entitled to begin receiving benefits in May 2004.

In short, this case presents a situation in which a person suffers from a permanent incapacity, but the extent of that incapacity varies.[9] Notwithstanding her inability to maintain employment, Ms. Sailors may function well much of the time. However, as reference to her past history indicates, Ms. Sailors' inability to care for either her person or her estate has been absolute during times of acute illness.[10] Dr. McDonald testified as to the fluctuating nature of Ms. Sailors' condition, labeling it as unpredictable and recurrent, and opined that "the future could be the same as the past." Given these considerations, we find that Ms. Sailors' condition satisfies the criteria of La.Civ.Code art. 1493 and that she has proven herself to be a forced heir of Ms. Ardoin. We enter judgment reflecting this determination and remand for further proceedings.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed. Judgment is entered finding the appellant, Mary Plonsky Sailors, to be a forced heir of the decedent Jeannette P. Ardoin. This matter is remanded for further proceedings consistent with this opinion. All costs of this proceeding are assigned to the Succession of Jeanette P. Ardoin.

**REVERSED AND REMANDED.**

---

[9] We note that Article 1493, comment (c) appears to anticipate a situation in which a descendent may suffer from a permanent incapacity, but may experience periods in which the extent of that incapacity fluctuates. It provides, in part:

> The Legislature also requested that these Comments note that as a factual matter a person can be permanently incapable or infirm but on occasion have a temporary remission. It is not intended to be the policy of the Article that a mere temporary remission at the time of the decedent's death would disqualify an heir from being classified as "permanently" incapable or infirm within the new definition, provided that the condition is otherwise permanent.

[10] Portions of the testimony presented at the hearing relate to the standards of limited interdiction due to that portion of Article 1493, comment (c) which suggests that the incapacity provisions of the Article may be made in reference to the guidelines of limited interdiction. *See* La.Civ.Code art. 390. However, this reference is of little guidance in the present case as Ms. Sailors' capacity to function with the permanent condition of bipolar disorder varies.

11