977 So.2d 1000 (2007)
In the Matter of the SUCCESSION OF Winston R. CLARK.
No. 2006 CA 2210.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
*1001 Lawrence W. Bell, Gonzales, LA, for Plaintiff-Appellant, Brian Scott Clark.
Malcolm J. Dugas, Jr., Dugas, LeBlanc & Associates, L.L.C., Donaldsonville, LA, for Defendant-Appellee, Mary Beth Clark.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
The only child of the testator/decedent appeals a judgment, sustaining a peremptory exception raising the objection of no right of action that was filed by the executrix of his father's estate and dismissing the child's petition to have his father's testament declared to have been revoked. For the following reasons, the judgment is reversed and remanded.

Factual Background and Procedural History
Winston R. Clark (Winston) died during November 2005. According to an affidavit of death and heirship filed into the record by Brian Scott Clark (Brian),[1] Winston was married three times and fathered only one child, Brian, who was born of Winston's first marriage.[2] Based on his belief that Winston had left a last will and testament, Brian filed a petition to have a notary appointed for purposes of inventorying a safety deposit box that had been rented by Winston. The court-appointed notary reported that he had discovered the original of Winston's last will and testament, which was dated January 18, 1995. In his testament, Winston directed, in pertinent part:
In the event that my wife, Mary Beth Paille Clark survives me, I will and bequeath to her all of the property which I own at the date of my death, of every kind and character, less the forced portion inherited by son, Bryan Scott Clark, only in the event that such a forced portion is mandated by law at the time of my death. In the event that the laws of the State of Louisiana does not require or mandate a forced portion to my son at the time of my death, I will and bequeath all of my property owned by me at my death to my wife, Mary Beth Paille Clark.
* * *
In the event that my wife, Mary Beth Paille Clark, predeceases me, I then will all of the property that I own at the date of my death to a trust for the benefit of Melissa Yvette Paille, Wendy Ann Zeringue, and Ashley Renee Zeringue, being beneficiaries of both principal and income, and having as the trustee, Cleveland Paille, my brother-in-law.
Mary Beth Paille Clark (Mary Beth) was Winston's third wife according to Brian's affidavit of death and heirship. The allegations in Brian's petition indicate that Winston and Mary Beth were married on October 30, 1976, and were divorced on October 3, 2003, subsequent to the execution of the 1995 testament. Following the discovery of the 1995 testament, Mary Beth filed a petition for probate. Pursuant to the terms of the testament, the trial court named Mary Beth as the executrix of Winston's succession.
*1002 Subsequently, Brian filed a petition to declare that the testament had been revoked by operation of law, to remove Mary Beth as the executrix, and for a temporary restraining order and preliminary injunction. In his petition, Brian alleged that (1) he was Winston's only child, (2) Mary Beth and Winston were married on October 30, 1976, (3) Winston executed his last will and testament on January 18, 1995, (4) the couple was divorced by judgment dated October 3, 2003, (5) Winston died on November 26, 2005, and (6) Mary Beth and Winston were not married to each other at the time of Winston's death. Based on these allegations, Brian averred:
Decedent's last will and testament dated January 18, 1995, and the legacies, testamentary designations and appointments therein were revoked as of the date of his death, November 26, 2005, by operation of law.
Mary Beth responded by filing an exception raising the objection of no right of action, urging the inapplicability of LSA-C.C. art. 1608(5). This article provides that the revocation of a legacy occurs when the testator is divorced from the legatee after the testament is executed and at the time of his death. Mary Beth urged the testament was valid because this provision was enacted after the testament was executed.
At the hearing on the exception, counsel for Mary Beth urged that Brian did not have a right of action because he was not an heir, a legatee, or the executor of Winston's estate. In light of In re Succession of Gonzales, 03-0823 (La.App. 4th Cir. 3/10/04), 868 So.2d 987, Mary Beth argued that Brian did not have standing in this case. Brian countered by arguing that as the only child of the deceased, he had the right to challenge the validity of the testament under LSA-C.C. art. 1608(5). Mary Beth responded that even if LSA-C.C. art. 1608(5) applied retroactively, Brian still would not have standing since the testament provided for "secondary" legatees. At the close of the hearing, Mary Beth's exception was sustained, and Brian's petition was dismissed. Brian appealed.

No Right of Action
Generally, an action can only be brought by a person having a real and actual interest which he asserts. LSA-C.C.P. art. 681. The exception raising the objection of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. See LSA-C.C.P. art. 927(A)(5). The function of the objection of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n, 94-2015 (La.11/30/94), 646 So.2d 885, 888. The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Id. The party raising a peremptory exception bears the burden of proof. Falcon v. Town of Berwick, 03-1861 (La.App. 1st Cir.6/25/04), 885 So.2d 1222, 1224. Trial court rulings sustaining exceptions raising the objection of no right of action are reviewed de novo on appeal because they involve questions cf law. In re Succession of Jones, 03-0238 (La.App. 1st Cir.11/7/03), 868 So.2d 54, 55.
On the trial of a peremptory exception raising the objection of no right of action, evidence is admissible to support or controvert the objection pleaded when the grounds thereof do not appear from the petition. LSA-C.C.P. art. 931. Because neither party presented any evidence on the objection of no right of action, this *1003 court must decide, on the basis of Brian's allegations alone, whether he belongs to the class of persons to whom the law grants the cause of action asserted in the suit.
There are two kinds of succession: testate and intestate. LSA-C.C. art. 873. Testate succession results from the will of the deceased, contained in a testament executed in a form prescribed by law. LSA-C.C. art. 874. Intestate succession results from provisions of law in favor of certain persons, in default of testate successors. LSAC.C.-art. 875. Intestate successors are also called heirs, and testate successors are also called legatees. LSA-CC. art. 876.
In the absence of a valid testamentary disposition, the undisposed property of the deceased devolves by operation of law in favor of his descendants, ascendants, and collaterals, by blood or by adoption, and in favor of his spouse not judicially separated from him, in the order provided in and according to LSA-CC. arts. 881 through 901. LSA-CC. art. 880. Pertinent to the facts of this case is LSA-CC. art. 888, which provides that descendants succeed to the property of their ascendants. Therefore, in the absence of a valid testamentary disposition, Brian, as Winston's descendant, would inherit from Winston under the law of intestate succession.
With respect to testate succession, testamentary dispositions are particular, general, or universal. LSA-CC art. 1584.[3] A universal legacy is a disposition of all of the estate, or the balance of the estate that remains after particular legacies. LSA-CC art. 1585. The legacy to Mary Beth is a universal legacy in that it disposes of all of Winston's estate.
A legacy lapses when the legacy is declared invalid. LSA-CC. art. 1589(6).[4] Testamentary accretion takes place when a legacy lapses. Accretion takes place according to the testament, or, in the absence of a governing testamentary provision, according to LSA-CC arts. 1591 through 1596. LSA-CC. art. 1590.[5] Although Winston included a testamentary provision to deal with the issue of accretion, this provision arguably only dealt with accretion in the event that Mary Beth predeceased him and did not cover the possibility of the legacy to Mary Beth lapsing for any other reason.
In the event that the testamentary provision addressing the issue of accretion is found not to govern the contingency involved in this case, the provisions of LSA-C.C. arts. 1591 through 1596 would apply. *1004 See LSA-C.C. art. 1590. Any portion of the estate not disposed of under LSA-C.C. arts. 1591 through 1595 devolves by intestacy. LSA-C.C. art. 1596.[6]
In the event that the universal legacy in favor of Mary Beth lapsed by operation of law, Brian would possibly stand to inherit all of his father's estate under the law of intestacy. Being mindful that the exception of no right of action assumes that the petition states a valid cause of action for some person, it stands to reason that Brian, as Winston's descendant, is a member of the class that has a real or actual interest in the subject matter of the litigation, such that he would have a right to bring an action to have the court determine whether the legacy in favor of Mary Beth had lapsed by virtue of LSA-C.C. art. 1608(5). Therefore, we conclude that the trial court erred in finding that Brian had no right of action and in sustaining Mary Beth's exception.

Decree
For the foregoing reasons, the judgment of the trial court sustaining the peremptory exception raising the objection of no right of action and dismissing Brian Scott Clark's petition is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal will be assessed after a final disposition of this matter.
REVERSED AND REMANDED.
KUHN, J., concurs and assigns reasons.
KUHN, J., concurring.
I concur in the result reached. The majority notes that the party raising a peremptory exception bears the burden of proof. Since Mary Beth failed to introduce any evidence at the trial of the exception, Mary Beth failed to show that Brian, the decedent's alleged only child, does not have an interest in the subject matter of the suit. Although Mary Beth referred to the decedent's last will and testament in the pleading raising the exception of no right of action, she failed to introduce the testament as evidence. Therefore, Mary Beth failed to meet her burden of proof, and the trial court improperly sustained the exception.
NOTES
[1] In the record, Brian is sometimes referred to as "Bryan."
[2] In his affidavit of death and heirship relative to his falter, Brian declared that he was over the age of 23 and was in good mental and physical health.
[3] Testamentary dispositions currently are classified as particular, general, or universal legacies. See LSA-CC. arts. 1584-1587 (effective July 1, 1999). However, at the time the decedent executed the testament at issue in this case, LSA-C.C. art. 1605 provided that testamentary dispositions were classified as being either universal, under a universal title, or under a particular title. The 1997 revision comments to Article 1584 note that "[t]he names and characteristics of universal legacies and particular legacies are retained in this revision, but the name of the `legacy under universal title' has been changed to `general' legacy, and its characteristics are slightly modified in the new definition."
[4] Article 1589 was enacted by 1997 La. Acts, No. 1421, § 1, effective July 1, 1999. It reproduced the substance of Articles 1697 through 1699 and 1703 of the Louisiana Civil Code of 1870 and did not change the law. LSA-C.C. art. 1589, Revision Comments-1997, comment (a).
[5] Article 1590 was enacted by 1997 La. Acts, No. 1421, § 1, effective July 1, 1999. In this Article, the term "accretion" has been expanded to include the disposition of all lapsed legacies, not just joint legacies. LSA-C.C. art. 1590, Revision Comments-1997, comment (a).
[6] Article 1596 was enacted by 1997 La. Acts, No. 1421, § 1, effective July 1, 1999. This Article reproduced the substance and clarified the provisions of LSA-C.C. art. 1709 (1870). It did not change the law. LSA-C.C. art. 1593, Revision Comments-1997.